BROWNSTEIN HYATT FARBER SCHRECK, LLP
Jonathan C. Sandler, Bar No. 227532
jsandler@bhfs.com
Alexander R. Wolfe, Bar No. 339396
awolfe@bhfs.com
2029 Century Park East, Suite 950
Los Angeles, California 90067-2918
Telephone: 310.500.4600
Facsimile: 310.500.4602

Attorneys for Defendant
NELNET SERVICING, LLC erroneously named as
NELNET, INC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

PETER ZOCCO, individually and on behalf of all other similarly situated,

Plaintiff,

v.

NELNET, INC.,

Defendant.

Case No. 5:25-cv-04470-NW

**DEFENDANT NELNET SERVICING, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

[*Filed concurrently with Declaration of Jill Leitl, [Proposed] Order, Stipulation to Seal, and Administrative Motion to Seal*]

Date: December 3, 2025
Time: 9:00 a.m.
Ctrm: 3, 5th Floor
Judge: Hon. Noël Wise

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION AND TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT on December 3, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Noël Wise, United States District Court Judge, in Courtroom 3, 5th Floor of the United States District Court, Northern District of California, located at 280 South 1st Street, San Jose,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

California 95113, Defendant NELNET SERVICING, LLC erroneously served as NELNET, INC. ("Nelnet" or "Defendant"), by and through its undersigned counsel, will move to dismiss certain claims asserted by Plaintiff PETER ZOCCO, individually and on behalf of all other similarly situated ("Plaintiff").

Defendant's Motion is brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction and that all causes of action of this Plaintiff's Complaint ("Complaint") brought against Nelnet (*i.e.*, the First, Second, Third, and Fourth Causes of Action) fail to state a claim for which relief may be granted against Nelnet. This Motion is based upon the accompanying Memorandum of Points and Authorities, the documentation on file, and such other argument of counsel as the Court may wish to consider.

This Motion is made following the conference of counsel.

Dated: September 12, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
Jonathan C. Sandler
Alexander R. Wolfe
Attorneys for Defendant
NELNET SERVICING, LLC
erroneously named as NELNET, INC.

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 12
II. BACKGROUND .......... 13
III. STANDARD OF REVIEW .......... 14
IV. ARGUMENT .......... 14
A. Zocco's Action Must be Dismissed Under Rule 12(b)(1) Because Nelnet is Entitled to Derivative Sovereign Immunity. .......... 14
1. Derivative Sovereign Immunity is Jurisdictional and Properly Brought Under Rule 12(b)(1). .......... 15
2. Nelnet is Entitled to Derivative Sovereign Immunity and Dismissal of the Complaint. .......... 17
B. Zocco Failed to State a Claim for Violation of the ECPA. .......... 19
1. Zocco Failed to Adequately Plead Interception. .......... 19
2. Zocco Failed to Adequately Plead Contents. .......... 20
3. Nelnet Qualifies for an Exception under Section 2511. .......... 21
a. Nelnet Qualifies as a Matter of Law for the Exception to ECPA Claims for Acting Under the Color of Law. .......... 21
b. If Nelnet was not Acting Under Color of Law, Nelnet Qualifies as a Matter of Law for the Party Exception. .......... 21
(1) Zocco Failed to Allege that the Primary Purpose of Nelnet's Alleged Interception or Disclosure was to Commit an Independent Violation or Tort. .......... 23
(2) Zocco Fails to Allege a Tort or Violation Independent of Nelnet's Alleged Interception or Disclosure. .......... 24
C. The Higher Education Act Preempts Zocco's State-Law Claims. .......... 24
1. Section 1098g Expressly Preempts Zocco's CIPA and California Constitutional Claims. .......... 25
a. Section 1098g expressly preempts Zocco's claims based on CIPA. .......... 25
b. Section 1098g expressly preempts Zocco's claims based on the California Constitution. .......... 26
2. Zocco's CIPA and California Constitutional Claims are Obstacle Preempted by the HEA. .......... 27
D. Zocco Failed to State A Claim for Violation of CIPA. .......... 28
1. Zocco Failed to State a Claim for Violation of Section 631(a). .......... 28


BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

2. Zocco Failed to State a Claim for Violation of Section 632. .......... 29

E. Zocco Failed to State a Claim For Invasion of Privacy Under the California Constitution.......... 31

V. CONCLUSION .......... 33

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerson v. Bean Dredging LLC*,
589 F.3d 196 (5th Cir. 2009) .... 15, 16

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
790 F.3d 641 (6th Cir. 2015) .... 16

*Agro Dynamics, LLC v. United States*,
692 F. Supp. 3d 1003 (S.D. Cal. 2023) .... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 14

*Ass'n des Éleveurs de Canards v. Bonta*,
33 F.4th 1107 (9th Cir. 2022) .... 24

*Assurance Wireless USA, L.P. v. Reynolds*,
100 F.4th 1024 (9th Cir. 2024) .... 24, 25

*Atay v. Cnty. of Maui*,
842 F.3d 688 (9th Cir. 2016) .... 24, 27

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 14

*Boudette v. Barnette*,
923 F.2d 754 (9th Cir. 1991) .... 31

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) .... 15

*Brahmana v. Henard*,
No. C 10-01790 JW, 2011 WL 7293390 (N.D. Cal. Mar. 23, 2011) .... 33

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 21

*Bulluomini v. Citigroup, Inc.*,
No. CV 13-01743 CRB, 2023 WL 3855589 (N.D. Cal. July 24, 2013) ........ 31

*Butters v. Vance Int'l, Inc.*,
225 F.3d 462 (4th Cir. 2000) ........ 15

*Cabalce v. Thomas E. Blanchard & Assocs.*,
Inc., 797 F.3d 720, 732 (9th Cir. 2015) ........ 15

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ........ 25

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ........ 15

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) ........ 26

*Childs v. San Diego Fam. Hous. LLC*,
22 F.4th 1092 (9th Cir. 2022) ........ 16, 17

*Childs v. San Diego Fam. Hous., LLC*,
No. 19CV2329 JM (MDD), 2020 WL 12689448 (S.D. Cal. Sept. 15, 2020) ........ 17

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ........ 27

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) ........ 19, 20

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir. 2018) ........ 15

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ........ 17, 18

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 18

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*Doe v. Tenet Healthcare Corp.*,
No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956 (E.D. Cal. June 9, 2025) .......... 22

*Dougherty v. United States Dep't of Homeland Sec.*,
No. 22-40665, 2023 WL 6123106 (5th Cir. Sept. 19, 2023) .......... 18

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994) .......... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 29

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 33

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 26

*Goulart v. Cape Cod Healthcare, Inc.*,
No. CV 25-10445-RGS, 2025 WL 1745732, at *1 (D. Mass. June 24, 2025) .......... 22, 23, 24

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 29

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 20

*In re Hanford Nuclear Reservation Litig.*,
534 F.3d 986 (9th Cir. 2008) .......... 15

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 28

*Hill v. Nat'l Collegiate Athletic Ass'n*,
26 Cal. Rptr. 2d 834 (1994) .......... 31

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) .......... 32

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*Katzberg v. Regents of Univ. of Cal.*,
29 Cal. 4th 300, 324, n.2 (2002)), *aff'd in part*, 474 F. App'x 513 (9th Cir. 2012) .......... 33

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
955 F.3d 908 (11th Cir. 2020) .......... 26

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 29

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 21, 22, 23, 24

*Montana Med. Ass'n v. Knudsen*,
119 F.4th 618 (9th Cir. 2024) .......... 24, 27

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 14

*Myers v. United States*,
323 F.2d 580, 583 (9th Cir. 1963) .......... 17

*Nat'l R.R. Passenger Corp. v. Su*,
41 F.4th 1147 (9th Cir. 2022) .......... 25

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
928 F.3d 639 (7th Cir. 2019) .......... 26

*Nwauzor v. GEO Grp., Inc.*,
127 F.4th 750 (9th Cir. 2025) .......... 15

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) .......... 20

*Pennsylvania v. Navient Corp.*,
967 F.3d 273 (3d Cir. 2020) .......... 25, 26

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) .......... 30

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 22

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-cv-00330-ODW-SP, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .... 22

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .... 29

*Sams v. Yahoo!, Inc.*,
No. CV-10-5897-JF HRL, 2011 WL 1884633, at *7 (N.D. Cal. May 18, 2011) .... 20

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .... 32

*Silvers v. Sony Pictures Ent., Inc.*,
402 F.3d 881 (9th Cir. 2005) .... 31

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .... 30, 31

*Spurlin v. Air & Liquid Sys. Corp.*,
568 F. Supp. 3d 1050 (S.D. Cal. 2021) .... 16

*Student Loan Servicing All. v. D.C.*,
351 F. Supp. 3d 26 (D.D.C. 2018) .... 27

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .... 22

*Swarts v. The Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. Aug. 30, 2023) .... 29

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .... 28

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .... 30

*United States v. Forrester*,
512 F.3d 500, 510 (9th Cir. 2008), *aff'd*, 713 F.3d 1175 (9th Cir. 2013) .... 20

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*United States v. Lynah*,
188 U.S. 445 (1903) .......... 16

*United States v. Mitchell*,
445 U.S. 535 (1980) .......... 15

*United States v. Sherwood*,
312 U.S. 584 (1941) .......... 15

*Wells v. One2One Learning Found.*,
39 Cal. 4th 1164 (2006) .......... 18

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 31

*Yearsley v. W.A. Ross Const. Co.*,
309 U.S. 18 (1940) .......... 14, 15, 16, 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 20

**Statutes**

18 U.S.C. § 2510 .......... 19

18 U.S.C. § 2510(4) .......... 19

18 U.S.C. § 2510(8) .......... 20

18 U.S.C. § 2511(2)(c) .......... 21

18 U.S.C. § 2511(2)(d) .......... 21

18 U.S.C. § 2520 .......... 18, 20

20 U.S.C. §§1070-1099 .......... 25

20 U.S.C. § 1082(m)(3) .......... 21, 27

20 U.S.C. § 1087f(a)(2) .......... 27

20 U.S.C. § 1087f(b)(2)-(4) .......... 18, 21, 27

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

20 U.S.C. § 1092b ........ 27

20 U.S.C. § 1092b(a) ........ 21, 28

20 U.S.C. § 1092b(g)(1) ........ 21, 27

20 U.S.C. § 1098g ........ 25, 26, 27

Cal. Penal Code § 631 ........ 13, 28, 29, 31

Cal. Penal Code § 631(a) ........ *passim*

Cal. Penal Code § 632 ........ *passim*

Cal. Penal Code § 632(a) ........ *passim*

Cal. Penal Code § 632(c) ........ 30, 31

California Invasion of Privacy Act ........ *passim*

Electronic Communication Privacy Act ........ *passim*

Higher Education Act ........ *passim*

HIPAA ........ 23

**Other Authorities**

16 C.F.R. § 313 ........ 24

Cal. Const. art. I, § 1 ........ 26, 28, 33

California Constitution ........ *passim*

Fed. R. Civ. P. 12(b)(1) ........ 14, 16, 17

Fed. R. Civ. P. 12(b)(6) ........ 14

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Peter Zocco's ("Zocco")[1] complaint ("Complaint") focuses on Google LLC's ("Google") data tracking tools—particularly Google Analytics—and alleges that Google and Google Analytics are responsible for intercepting and using federal student loan borrowers' data in violation of federal and state law. The Complaint is predominately a grievance with Google, but intermittently woven into the Complaint are allegations that Nelnet[2] used Google Analytics to collect and organize data that student borrowers consensually submitted to Nelnet or generated while using Nelnet's website. In Zocco's view, Nelnet's alleged use of data software to capture borrower data that Nelnet lawfully acquired renders Nelnet complicit in Google's privacy-violation scheme.

But to the degree that Nelnet uses Google Analytics as alleged in the Complaint, which is not conceded, it does so because Nelnet must implement the program under its contract with the Department of Education ("DOE") and the data collection and contracting provisions of the Higher Education Act ("HEA"). Indeed, the website referenced in the Complaint has a ".gov" domain. Nelnet accordingly has derivative sovereign immunity, and this Court thus lacks subject matter jurisdiction. Further, the state-law claims—which turn on an alleged failure to disclose the tracking to borrowers—are preempted by the HEA.

Even if this Court has subject matter jurisdiction and the claims are not preempted, the Complaint fails to state a plausible federal Electronic Communication Privacy Act ("ECPA") claim because Zocco does not adequately plead the elements of interception or contents. Also, Nelnet qualifies for an exception to ECPA liability because it was acting under color of law and was a

---

[1] Nelnet uses "Zocco" to refer to Peter Zocco and all members of the putative class.
[2] Defendant NELNET SERVICING, LLC was erroneously served as NELNET, INC. Declaration of Jill Leitl in Support of Nelnet's Motion to Dismiss ["Leitl Decl."] ¶¶ 2–3.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

party to the communications allegedly intercepted on its website. Likewise, the Complaint fails to state claims for violations of Section 631 or 632 of the California Invasion of Privacy Act ("CIPA") because Nelnet was a party to borrowers' communications. Finally, Zocco fails to state a claim for invasion of privacy under the California Constitution because the disclosures alleged in the Complaint are not egregious breaches of social norms.

Nelnet thus asks this Court to dismiss the Complaint.

## II. BACKGROUND

Nelnet is a federal student loan servicer that allows borrowers, including Zocco, to manage and pay their student loans through an online portal website, nelnet.studentaid.gov ("Website"). Compl. ¶¶ 1, 2, 6, 8, 31, 35.[3] Nelnet provides its services under its contract with the DOE and pursuant to the HEA, which prescribes that the DOE enter into contracts for servicing student loans. Leitl Decl. ¶ 3. In addition to the many requirements placed on Nelnet under its DOE contract and the HEA, the DOE requires Nelnet to implement Google Analytics on the Website to satisfy the borrower data-reporting requirements of the HEA. *See id* ¶ 4 Ex. 1 (DOE issued a Business Operations Change Request Form ["Change Request"]). Nelnet disclosed the use of Google Analytics in its Privacy Policy.

Zocco filed his Complaint in this Court on May 27, 2025. *See* Compl. In general, Zocco alleges that Nelnet embedded Google Analytics into the Website, enabling Google to collect various forms of borrower data, including IP addresses, versions of their operating systems, browsers, HTTP requests and responses, languages, screen resolutions, "Custom Events," URLs, User-IDs, the last four digits of phone numbers, and part of their email addresses. *See*, *e.g.*, Compl. ¶¶ 50, 56, 70, 74.[4] Zocco further alleges that Google uses this information, along with the vast network of consumer information that it already possesses, to identify and

---

[3] Nelnet does not concede the allegations in the complaint, but accepts them as true for purposes of this motion.
[4] The Website has the domain .gov and it is a government website.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

track the individual borrowers during and after they visit the Website. *See id.* ¶¶ 65, 72. Zocco alleges this monitoring and data compilation ultimately enables Google to target borrowers with specific advertisements and generate profits for Google and Nelnet. *See id.*

For Nelnet's alleged role in Google's acquisition and use of borrower data, Zocco brings four claims against Nelnet: (1) violation of the ECPA; (2) violation of CIPA Section 631(a); (3) violation of CIPA Section 632(a); and (4) invasion of privacy under the California Constitution. *See id.* ¶¶ 90-154.

## III. STANDARD OF REVIEW

A defendant may challenge the court's subject matter jurisdiction to adjudicate a claim under Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To meet this burden, "the non-conclusory 'factual content'" of a plaintiff's complaint and "reasonable inferences from that content," must be at least "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Twombly*, 550 U.S. at 557).

## IV. ARGUMENT

### A. Zocco's Action Must be Dismissed Under Rule 12(b)(1) Because Nelnet is Entitled to Derivative Sovereign Immunity.

"Derivative sovereign immunity," otherwise referred to as "*Yearsley* immunity," "protects a private entity that has contracted with the federal government, provided that the government acted within its constitutional authority

and that the government has specifically authorized the contractor's actions at issue." *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 (9th Cir. 2025) (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 506 (1988); *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 21 (1940)). The Ninth Circuit has held that "derivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs.*, Inc., 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)).

1. Derivative Sovereign Immunity is Jurisdictional and Properly Brought Under Rule 12(b)(1).

The "United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) ("If the basis for dismissing a *Yearsley* claim is sovereign immunity, then a *Yearsley* defense would be jurisdictional[.]").

"[C]ontractors . . . acting within the scope of their employment for the United States have derivative sovereign immunity." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000); *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018); *Campbell-Ewald*, 577 U.S. 153 (referring to *Yearsley* immunity as "derivative sovereign immunity"). "Sovereign immunity exists because it is in the public interest to protect the exercise of certain governmental functions. This public interest remains intact when the government delegates that function down the chain of command." *Butters*, 225 F.3d at 466.

Derivative sovereign immunity must be treated as jurisdictional and properly



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

brought under Rule 12(b)(1) based on the sweeping language of *Yearsley*. In *Yearsley*, the Supreme Court held that derivative sovereign immunity shielded a contractor from liability for causing land in the Missouri River to "wash[] away" while performing work under a Government contract. 309 U.S. at 19, 22. *Yearsley* emphasized that the contractor could not be sued and the landowner's relief was limited to what it could obtain from the Government. *See id.* at 20-21 ("[I]t is clear that if [the contractor's] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."); *id.* at 21 ("Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the [only] ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred."); *id.* at 22 ("[T]here is no ground for holding [the Government's] agent liable who is simply acting under the [contractual] authority thus validly conferred. The action of the agent is 'the act of the government[.]'" (quoting *United States v. Lynah*, 188 U.S. 445 (1903)).[5]

Although the Ninth Circuit has not expressly ruled whether *Yearsley* is jurisdictional, it recently signaled that Rule 12(b)(1) is the proper vehicle for *Yearsely* immunity in *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1095 n.1 (9th Cir. 2022). In holding that denial of *Yearsley* immunity was not immediately appealable under the collateral order doctrine, the *Childs* court noted

[5] Despite *Yearsley's* language equating contractors' immunity with that of the Government, there is presently a circuit split among the few courts to squarely address this issue: the Fifth and Sixth Circuits have ruled that derivative sovereign immunity is not jurisdictional, while the Fourth Circuit has ruled that it is. *See Spurlin v. Air & Liquid Sys. Corp.*, 568 F. Supp. 3d 1050, 1052 (S.D. Cal. 2021) (outlining the circuit split). The former courts reason that, because *Yearsley* did not mention "sovereign immunity" or "jurisdictional," *Yearsley* only supports a merits defense. *See, e.g.*, *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015); *Ackerson*, 589 F.3d at 207; *Spurlin*, 568 F. Supp. 3d at 1052-54. But *Yearsley* does not contain language supporting a merits defense. *See Yearsley*, 309 U.S. at 19-23. *Yearsley* only provides language broadly equating contractors with the Government, and governmental immunity is jurisdictional.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

that the defendant asserted immunity under Rule 12(b)(1) without rejecting this use of the rule. *See id.* at 1094, 1095 n.1. The Ninth Circuit so countenanced this use of Rule 12(b)(1) despite the district court expressly flagging the issue. *See Childs v. San Diego Fam. Hous., LLC*, No. 19CV2329 JM (MDD), 2020 WL 12689448, at *3 (S.D. Cal. Sept. 15, 2020) ("[I]t is at least questionable whether *Yearsley* is a jurisdictional bar to litigation, . . . as opposed to a merits defense inappropriate for resolution . . . under Rule 12(b)(1).").

Moreover, the Ninth Circuit's precedent precludes it from reaching a conclusion other than *Yearsley* being jurisdictional. In *Myers v. United States*, the Ninth Circuit held that, "[t]o the extent that the work performed by [the defendant] was done under its contract with the [Government], and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants." 323 F.2d 580, 583 (9th Cir. 1963). This sweeping language parallels that of *Yearsley*. *See* 309 U.S. at 20-22.

2. Nelnet is Entitled to Derivative Sovereign Immunity and Dismissal of the Complaint.

Nelnet has *Yearsley* immunity because it complied with its valid contract with the DOE, and the DOE would be immune from suit here. This court lacks jurisdiction and should dismiss under Rule 12(b)(1).

"A party challenging jurisdiction under Rule 12(b)(1) may do so either on the face of the pleadings or by presenting extrinsic evidence." *Childs*, 2020 WL 12689448, at *3 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a factual attack, the court need not presume the truthfulness of the plaintiff's allegations, and the court may look beyond the complaint without having to convert the motion into one for summary judgment." *Id.* (citing *White*, 227 F.3d at 1242).

"[T]he United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Congress may be deemed to have waived this immunity only if it

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

clearly expressed its intent to do so in a statute. *See id.* No such expression exists as to CIPA, California Constitutional, or ECPA claims. *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 817-18 (N.D. Cal. 2023) (finding that a "public entity" was immune from CIPA liability because "governmental agencies are not included within the general words of [CIPA]" (quoting *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1192 (2006)); *Agro Dynamics, LLC v. United States*, 692 F. Supp. 3d 1003, 1022 (S.D. Cal. 2023) ("If Congress wanted to carve out state constitutional claims, it could have said so."). Indeed, the ECPA expressly disavows claims against the Government under its civil liability provision. *See Dougherty v. United States Dep't of Homeland Sec.*, No. 22-40665, 2023 WL 6123106, at *3 (5th Cir. Sept. 19, 2023) ("[T]he express language of § 2520 prohibits claims against the United States brought under that section[.]"). The federal Government and its agencies like the DOE are therefore immune to CIPA, California Constitutional, and ECPA claims like those brought by Zocco.

The DOE validly contracted with Nelnet under the HEA. *See* 20 U.S.C. § 1087f(b)(2)-(4) (providing that the Government may enter into contracts for servicing student loans, creating a borrower data system, and "such other aspects" of administering the student loan program as the Government deems necessary). The DOE directed Nelnet to implement Google Analytics on the Website pursuant to its contract with Nelnet, leaving Nelnet with no discretion whether to implement Google Analytics. *See* Leitl Decl. ¶ 4; Ex. 1(Change Request issued by DOE titled "USDS Implementation of FSA Google Analytics" requiring servicers to "implement the FSA Google Analytics standard with the implementation of Single Sign-On," which "will allow FSA to track the user experience across StudentAid.gov and the servicer websites"). Thus, Nelnet is entitled to derivative sovereign immunity and the Complaint must be dismissed for lack of subject matter jurisdiction.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

**B. Zocco Failed to State a Claim for Violation of the ECPA.**

"An ECPA claim requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064-65 (C.D. Cal. 2024) (citing 18 U.S.C. §§ 2510 *et seq.*).

1. Zocco Failed to Adequately Plead Interception.

Section 2510(4) of the ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

In *Crowley v. CyberSource Corp.*, this Court held that the plaintiff failed to plausibly allege interception based on his allegations that he "sent certain information [via email] to [Amazon.com, Inc.], which then conveyed it to" a third party. 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001). This Court explained that Amazon did not intercept the communication in the email "within the meaning of the [ECPA], because Amazon did not acquire it using a device other than the drive or server on which the email was received." *Id.* "Amazon merely received the information transferred to it by [the plaintiff]." *Id.* "Amazon acted as no more than the second party to a communication." *Id.*

Nelnet similarly "acted no more than the second party to [Zocco's] communication[s]." *Id.* Zocco alleges that he consensually submitted his private information to Nelnet through the Website—the device through which Nelnet acquired Zocco's information. *See, e.g.*, Compl. ¶ 34. While, according to Zocco's allegations, Google intercepted his private information through Google Analytics, Google Analytics is not the device through which Nelnet received Zocco's information, but rather through the Website. *See, e.g.*, *id.* ¶¶ 50-52. Even if Zocco's allegations establish that Nelnet "conveyed" Zocco's information to Google, such conveyance to a third party does not establish interception per

*Crowley*, 166 F. Supp. 2d at 1269.[6]

2. Zocco Failed to Adequately Plead Contents.

"[U]nder the ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see* 18 U.S.C. § 2510(8). Accordingly, "e-mail to/from address and IP addresses" and other "addressing information" do not qualify as "contents" because they do not enable one to "find out the contents of [] messages or know the particular pages on websites the person viewed." *Sams v. Yahoo!*, Inc., No. CV-10-5897-JF HRL, 2011 WL 1884633, at *7 (N.D. Cal. May 18, 2011) (alteration in original) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)), *aff'd*, 713 F.3d 1175 (9th Cir. 2013). "[C]ourts have concluded that a URL with only basic identification and address information is not content" unless it discloses search terms, for example. *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023).

The information that Zocco posits as "contents" protected by the ECPA includes, among other things: the last four digits of one's phone number, email addresses, device information, IP addresses, URLs generated by user's interactions with Nelnet's Website, HTTP requests, HTTP responses, User-IDs, and browser fingerprints. *See* Compl. ¶¶ 34, 50, 51, 56, 63, 74. None of this information necessarily reveals "any information concerning the substance, purport, or meaning of" the electronic communications associated with it. 18 U.S.C. § 2510(8); *see* *Sams*, 2011 WL 1884633, at *7; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 718. Zocco's ECPA claim thus must be dismissed as long as it relies on this information without more to try to satisfy the "contents" element.

---

[6] *Crowley* also forecloses Zocco's ECPA claim for aiding and abetting. *See* 166 F. Supp. 2d at 1269 ("Section 2520[,]. . . does not provide for a civil action against one who aid and abets a violation of the [ECPA]" (quoting *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000)); Compl. ¶ 33.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

3. Nelnet Qualifies for an Exception under Section 2511.

a. Nelnet Qualifies as a Matter of Law for the Exception to ECPA Claims for Acting Under the Color of Law.

The ECPA provides that "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication[.]" 18 U.S.C. § 2511(2)(c). Under its contract with the DOE and pursuant to the HEA, Nelnet is and was required to collect the data that borrowers submit to the Website, submit the data to the DOE, and implement and use Google Analytics. *See* 20 U.S.C. §§1082(m)(3), 1087f(b), 1092b(a), 1092b(g)(1); Leitl Decl. ¶¶ 3-4; Ex. 1. Nelnet was, therefore, a party to borrowers' communications acting under color of law.

b. If Nelnet was not Acting Under Color of Law, Nelnet Qualifies as a Matter of Law for the Party Exception.

"[T]he [ECPA] allows interception where the interception is made by a 'party' to the communication or where a 'party' has consented to the interception." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (quoting 18 U.S.C. § 2511(2)(d)). "This exception does not apply . . . where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law." *Id.* (quoting 18 U.S.C. § 2511(2)(d)). This is known as the "crime-tort" exception to the party exception. *See id.* The Complaint reflects that Nelnet was a party to Zocco's and other borrowers' communications, *see, e.g.*, Compl. ¶ 34, and that any alleged interception by Nelnet was not "for the purpose of" committing a crime or tort. 18 U.S.C. § 2511(2)(d).

To satisfy the crime-tort exception, Zocco has the burden to and "must allege that either the 'primary motivation or a determining factor in [Nelnet's] actions has been to injure [Zocco] tortiously.'" *In re Meta Pixel*, 647 F. Supp. 3d at 797 (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

tortious." *Doe v. Tenet Healthcare Corp.*, No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956, at *23 (E.D. Cal. June 9, 2025) (emphasis and alteration in the original) (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "[A] plaintiff must allege the defendant acted with a 'criminal or tortious purpose [that is] separate and independent from the act of the recording'" or interception itself. *Id.* (second alteration in original) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)).

"Courts have applied the ECPA's 'crime-tort exception' where the 'intentional *disclosure*' of private information constituted a '"further impropriety" independent and separate from [the] *interception*' of private information." *Id.* (emphases and alteration in original) (quoting *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-cv-00330-ODW-SP, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025)). Further, as this Court observed in *In re Meta Pixel*, "[m]ultiple courts in this district have found that the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." 647 F. Supp. 3d at 797.

In *Goulart v. Cape Cod Healthcare, Inc.*, the court considered whether the crime-tort exception applied to a defendant that allegedly used digital marketing trackers (Meta Pixel and Google Analytics) to collect private medical information about users who interacted with the defendant's patient portal website. *See* No. CV 25-10445-RGS, 2025 WL 1745732, at *1 (D. Mass. June 24, 2025). The *Goulart* plaintiffs contended that the crime-tort exception applied because they "plausibly allege[d] that [the defendant] intended to disclose their protected health information to third parties and that disclosure of such information [was] ipso facto criminal and tortious." *Id.* at *3. The court rejected this argument. *See id.* The court concluded that the complaint "fail[ed] to plausibly allege that [the defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience." *Id.*

The allegations that the *Goulart* court found insufficient to invoke the crime-tort exception include that: "[defendant] used Meta Pixel and Google's software tools to knowingly disclose information that allows . . . advertisers to target patients with ads," defendant "barter[ed] its patients' PII/PHI to Facebook because it wanted access to the Meta Pixel tool,'" and "in exchange for disclosing PII about its patients, [defendant] had been 'compensated by Facebook with enhanced online advertising services[.]'" *Id.* at *4.

The *Goulart* court added that it was "unconvinced that the [c]omplaint sufficiently allege[d] an independent crime or tort beyond the alleged interception itself." *Id.* at *4 n.3. This was because the allegations that the defendant "violated HIPAA and various torts encompass[ed] only the simultaneous interception and disclosure of information to Facebook and Google—no data was alleged to have been independently used in a crime or tort committed by" the defendant. *Id.*

(1) Zocco Failed to Allege that the Primary Purpose of Nelnet's Alleged Interception or Disclosure was to Commit an Independent Violation or Tort.

Zocco's allegations about the crime-tort exception are materially indistinguishable from those that the *Goulart* court found insufficient. Zocco alleges that Nelnet committed multiple violations of laws and torts other than the ECPA, but at no point alleges that Nelnet intercepted or disclosed Zocco's information for the primary purpose of committing those violations or torts. *See generally* Compl. The only purpose Nelnet allegedly had in using Google Analytics was commercial gain. *See, e.g.*, Compl. ¶ 72 (alleging that use of Google Analytics enables "companies, including [Nelnet], to profit from [borrower] information for targeted advertising purposes"). Thus, the crime-tort exception cannot apply here. *See In re Meta Pixel*, 647 F. Supp. 3d at 797.

(2) Zocco Fails to Allege a Tort or Violation Independent of Nelnet's Alleged Interception or Disclosure.

Zocco's allegations also fail to allege a violation or tort "separate and independent" of the alleged wiretap. *Id.* Zocco merely alleges "simultaneous interception and disclosure of information" communicated to Google Analytics, not that Nelnet independently used the data in a crime or tort. *Goulart*, 2025 WL 1745732, at *4 n.3; *see, e.g.*, Compl. ¶ 52. Throughout the Complaint, Zocco equivocates between "disclosure" and "intercept" but always refers to the same alleged phenomenon: Google Analytics obtaining user data as they navigate the Website. *See, e.g.*, Compl. ¶ 75 ("Plaintiff's communications with Defendant were *disclosed* by Defendant to Google and/or *intercepted* in transit by Google[.]" (emphasis added)). It follows that Zocco's conclusory allegation that Nelnet violated 16 C.F.R. § 313—as well as any other violations or torts alleged in the Complaint—does not satisfy the crime-tort exception because it describes the same simultaneous disclosure or interception effected by Google Analytics that allegedly violates the ECPA. *See* Compl. ¶ 107-08.

**C. <u>The Higher Education Act Preempts Zocco's State-Law Claims.</u>**

Federal preemption of state law can be express or implied. *See Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 623 (9th Cir. 2024). Express preemption exists "when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031-32 (9th Cir. 2024) (quoting *Ass'n des Éleveurs de Canards v. Bonta*, 33 F.4th 1107, 1113–14 (9th Cir. 2022)). Obstacle preemption—a type of implied preemption—"exists . . . where 'the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of congress,' known as obstacle preemption." *Montana Med. Ass'n*, 119 F.4th at 623 (quoting *Atay v. Cnty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

1. Section 1098g Expressly Preempts Zocco's CIPA and California Constitutional Claims.

Section 1098g expressly preempts Zocco's CIPA and California Constitution claims because they effectively require student loan servicers to make disclosures, particularly as to the use of Google Analytics or similar data software. "When a statute contains an express preemption clause, we look only to the text 'without any presumptive thumb on the scale for or against preemption.'" *Assurance*, 100 F.4th at 1032 (quoting *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024)). "'[T]he task of statutory construction must in the first instance focus on the plain wording of the [preemption] clause' and then consider 'the surrounding statutory framework[.]'" *Id.* (alterations in original) (quoting *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022)).

Title IV of the HEA and the regulations promulgated thereunder govern administration of the federal student loan programs that Zocco and the putative class are enrolled in. *See* 20 U.S.C. §§1070-1099. Section 1098g provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 . . . shall not be subject to any disclosure requirements of any state law." 20 U.S.C. § 1098g. Although the HEA does not define "disclosure" or "disclosure requirements" in Section 1098g, the "language of § 1098g is [] broad and unqualified; it expressly preempts 'any' state claim premised on 'any' disclosure requirement imposed by state law regarding such loans." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020).

a. Section 1098g expressly preempts Zocco's claims based on CIPA.

Sections 631(a) and 632(a) both require authorization or consent from parties to a communication for compliance. Section 631(a) of CIPA prohibits unauthorized or nonconsensual wiretapping, interception of communications, use of information so intercepted from communications, and aiding and abetting such tapping, use, or interception. *See* Cal. Penal Code § 631(a); *see also* Compl.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

¶¶ 114-25. Section 632(a) of CIPA prohibits unauthorized or nonconsensual eavesdropping or recording of confidential communications by means of an electronic device. Cal. Penal Code § 632(a); *see also* Compl. ¶¶ 126-39.

To obtain authorization or consent from borrowers to use Google Analytics—or any software that could assist loan servicing—servicers would invariably have to disclose their use of such software to borrowers. Section 1098g, therefore, expressly preempts Sections 631(a) and 632(a) of CIPA. *See Navient Corp.*, 967 F.3d at 288. This conclusion comports with decisions holding that Section 1098g preempted State laws requiring affirmative disclosures beyond those required by the HEA. *See, e.g.*, *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 647 (7th Cir. 2019) ("Section § 1098g preempts a state law declaring, for example, that student loan servicers must affirmatively disclose X and Y in a specific format and at a specific time."); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 916-17 (11th Cir. 2020) ("[T]he precise language Congress used in § 1098g preempts only state law that imposes disclosure requirements[.]"); *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010) (explaining that state laws requiring "alternate disclosures" are preempted by Section 1098g).

b. Section 1098g expressly preempts Zocco's claims based on the California Constitution.

Section 1098g expressly preempts Zocco's claim for invasion of privacy under the California Constitution for essentially the same reasons that Zocco's Section 631(a) and 632(a) claims are expressly preempted. *See* Cal. Const. art. I, § 1. To state an invasion of privacy claim, a plaintiff must establish, among other things, "a reasonable expectation of privacy under the circumstances," but there is no expectation of privacy if the plaintiff provided "voluntary consent to the invasive actions of defendant." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091 (N.D. Cal. 2018). For a servicer to avoid violating the California Constitution then, they must obtain consent to use software like Google Analytics,

which, again, invariably requires disclosure of such use. Section 1098g thus preempts Zocco's invasion of privacy claim. *See* 20 U.S.C. § 1098g.

2. Zocco's CIPA and California Constitutional Claims are Obstacle Preempted by the HEA.

"Under the doctrine of obstacle preemption, a state law is preempted if it 'undermines the intended purpose and 'natural effect' of the federal law.'" *Montana Med. Ass'n*, 119 F.4th at 623 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). "We determine whether the state law creates a 'sufficient "obstacle" to give rise to implied preemption' by looking to 'the federal statute as a whole and identifying its purpose and intended effects.'" *Id.* (quoting *Atay*, 842 F.3d at 699).

"Congress' purpose in enacting the HEA was to delegate authority to the federal government to select and contract directly with servicers" to service student loans. *Student Loan Servicing All. v. D.C.*, 351 F. Supp. 3d 26, 62 (D.D.C. 2018). "Congress' purpose is clear, and allowing a state to impose separate, and potentially conflicting, contracting requirements would nullify that provision." *Id.* at 64.

Under Section 1087f(a)(2), the DOE "is instructed to contract 'at competitive prices' with those servicers 'which the secretary determines are qualified,' specifically those 'that have extensive and relevant experience,' and have 'demonstrated effectiveness.'" *Id.* at 62. Section 1087f(b)(3) further empowers the DOE to enter into contracts for "the establishment and operation of 1 or more data systems for maintenance of records on all loans[.]" Sections 1082(m)(3) and 1092b(g)(1) of the HEA require reporting "information on *all* aspects of loans" to the DOE and "comparison" of such "data submitted by individual lenders, servicers or guaranty agencies." 20 U.S.C. § 1092b(g)(1) (emphasis added); *see* 20 U.S.C. § 1082(m)(3). Section 1092b of the HEA requires creation of a "National Student Loan Data System" consisting of information that Zocco posits as private and protected like names, social security numbers, information about a borrower's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

finances, defaults, and so on. *See* 20 U.S.C. § 1092b(a); *see also, e.g.*, Compl. ¶¶ 32, 56. Plainly, the HEA highly values collecting information about servicers like Nelnet and the borrowers they service, so any state law that interferes with the DOE acquiring such information is subject to obstacle preemption.

Sections 631(a) and 632(a) of CIPA and the California Constitution stand as obstacles to the DOE's authority under the HEA to collect borrower data and directly contract with servicers to service student loans and collect said data. To service student loans, collect data, and report data to the DOE—a nonparty to borrower's communications with servicers—servicers must use the internet and some form of electronic device or software to communicate with borrowers and obtain their information. But Sections 631 and 632 of CIPA and the California Constitution either outright prohibit or severely impede such actions and uses by servicers. *See* Cal. Penal Code §§ 631(a), 632(a); Cal. Const. art. I, § 1. As a result, the DOE's authority to contract with servicers to accomplish these objectives is eviscerated, as is the DOE's ability to assess services' effectiveness, which requires review of the borrower data that servicers obtain. CIPA Sections 631(a), 632(a), and invasion of privacy claims under the California Constitution are thus obstacle preempted by the HEA.

**D. <u>Zocco Failed to State A Claim for Violation of CIPA.</u>**

1. Zocco Failed to State a Claim for Violation of Section 631(a).

Section 631(a) contains "three clauses that [create liability for] 'three distinct and mutually independent patterns of conduct,' including" a first clause for intentionally tapping or making an unauthorized connection, "a [second] clause . . . for secretly intercepting communications, and a [third] clause . . . for using information unlawfully obtained." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1120 & n.2 (C.D. Cal. 2024) (quoting *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978)). "Section 631(a) also provides for liability for third party violations" under an aiding and abetting provision in clause four, "which imposes

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

liability on a defendant who 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned [in Section 631(a)].'" (alteration in original) (quoting *Swarts v. The Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. Aug. 30, 2023)).

But "a 'party to the communication[s]' at issue is exempt from liability under § 631." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 927 (C.D. Cal. 2025) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020)). Nelnet was a party to the borrower communications alleged in the Complaint, so Nelnet is exempt from Section 631(a) liability.

Nelnet is also exempt under the party exception from liability for allegedly aiding and abetting Google. "[A] website owner that engages a vendor to record website-based communications for the website's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a)." *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023).

Zocco does not plausibly allege that Nelnet used Google Analytics as anything more than a "tool . . . that allow[ed] [Nelnet] to record and analyze its own data in aid of [Nelnet's] business," which cannot support aiding-and-abetting liability. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Zocco concedes that Google Analytics is a "tool for website traffic analysis." Compl. ¶¶ 45, 46. Yet, the Complaint does not demarcate where Nelnet's permissible alleged use of Google Analytics as a tool for organizing the information voluntarily communicated by borrowers to Nelnet ends and Nelnet's alleged aiding and abetting of Google's violations of Section 631(a) begins. *See* Compl. ¶¶ 31-81. There are only allegations of Google Analytics' capabilities, allegations that Nelnet uses Google Analytics, and a dearth of allegations about what Nelnet did to knowingly cause Google's independent violations of Section 631. *See id.* ¶¶ 67-81.

2. Zocco Failed to State a Claim for Violation of Section 632.

"To state a claim under § 632, [Zocco] must show there was (1) an electronic

[eavesdropping or] recording of (2) a confidential communication and (3) all parties did not consent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). A communication is not a "confidential communication" if it is made under circumstances "in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). "Throughout section 632, subdivision (a), the juxtaposition of the words 'eavesdrops' and 'records' shows that when the Legislature used the word 'records' it intended to prohibit two kinds of intrusion upon a communication: (1) a 'real time' interception of a communication, by which the perpetrator listens to the communication as it occurs; and (2) a mechanical recording of a communication for later playback." *People v. Drennan*, 84 Cal. App. 4th 1349, 1356 (2000).

"Section 632 makes it illegal to either 'eavesdrop upon or record' confidential communications. The third party doctrine applies to 'eavesdropping,' but not 'recording.'" *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) (internal citation omitted) (quoting Cal. Penal Code § 632(a)).

Nelnet was a party to borrowers' communications to the Website, so Nelnet cannot be liable for eavesdropping. *See id.* Zocco failed to plausibly allege either form of recording under *Drennan*. *See* 84 Cal. App. 4th at 1356. Neither Nelnet nor Google are alleged to have "listened" to borrowers' communications with the Website or mechanically recorded them for later playback—nor could they, as all borrowers' communications are alleged to be in typewritten format. *See generally* Compl. The language of Section 632 reflects that it is concerned with eavesdropping or recording *sounds*, so Zocco's allegations, which all concern typed communications, do not qualify under that Section. *See* Cal. Penal Code § 632.

Even if borrowers' communications qualified as recordings, they were not "confidential communications" that borrowers could reasonably have expected Nelnet not to record because borrowers communicated their information directly to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

the Website for processing. *See* Cal Penal Code § 632(c).

Additionally, Zocco's Section 632 claim cannot be sustained on the theory that Nelnet aided and abetted Google because, unlike Section 631(a), which expressly provides for liability for aiding or abetting a violation of Section 631, Section 632 does not mention such liability anywhere. *See* Cal. Penal Code §§ 631, 632; *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (commenting that "the doctrine of *expression unius est exclusion alterius* 'as applied in statutory interpretation creates a presumption that when a statute designates certain person, things, or manners of operation, all omissions should be understood as exclusions'" (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)).

**E. <u>Zocco Failed to State a Claim For Invasion of Privacy Under the California Constitution.</u>**

"The California Constitution sets a 'high bar' for establishing an invasion of privacy." *Smith*, 754 F. Supp. 3d at 944 (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014)). Zocco "must establish three elements: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *Id.* (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 26 Cal. Rptr. 2d 834, 859 (1994)). "Under the third prong, '[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.'" *Id.* (quoting *Hill*, 26 Cal. Rptr. 2d at 859). "[W]here the conduct amounts to 'routine commercial behavior,' the third element is not met." *Id.* at 946.

"Even disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *Yahoo Mail*, 7 F. Supp. 3d at 1038 (quoting *Bulluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2023 WL 3855589, at *6 (N.D. Cal. July 24, 2013))

(collecting cases where disclosures were not egregious breaches of social norms).

In *In re iPhone Application Litigation*, this Court granted defendants' motion to dismiss the putative class's invasion of privacy claims for failing to plausibly allege that disclosure of their information constituted an egregious breach of social norms. *See* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The plaintiffs had alleged that, defendants, including Apple, Inc., through their mobile devices and the applications that could be downloaded thereon, disclosed personal information to defendants without the device or app users' consent or authorization. *See id.* at 1050. "The information collected by Defendants include[ed] Plaintiffs' addresses and current whereabouts; the unique device identifier [] assigned to the Device; the user's gender, age, zip code and time zone; [] app-specific information such as which functions Plaintiff performed on the app[,]" and plaintiffs' "precise geographic location." *Id.*

If disclosure of information like the above—including the precise geographic location of an individual, their personal information, and the *substance* of their activities on apps—was not an egregious breach of social norms, then the less sensitive information that Zocco alleges Nelnet disclosed cannot be sufficiently egregious either. Zocco alleges that Google Analytics intercepts (or Nelnet discloses) information like metadata that, at best, allows Google to track borrowers *online*, not determine their physical location.

The most intimate information that Zocco alleges Nelnet disclosed includes partial email addresses, partial phone numbers, IP addresses, and (vaguely-phrased) "information related to [] financial services" that collectively enable targeted advertising. Compl. ¶ 74. Not only does such information fail to approach the egregiousness of the disclosures considered insufficient in *In re iPhone*, but equivalent disclosures have been rejected in other cases. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) ("Plaintiffs allege that Defendant disclosed personal information in the form of employment

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

information, bank account information, and their eligibility for preapproval for a credit card, but this information does not rise to the level of an 'egregious breach of social norms.'"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior.").[7]

Zocco thus fails to state a claim for invasion of privacy.

## V. <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Zocco's Complaint.

Dated: September 12, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
Jonathan C. Sandler
Alexander R. Wolfe
Attorneys for Defendant
NELNET SERVICING, LLC
erroneously named as NELNET, INC.

[7] Zocco seeks "compensatory damages" for his invasion of privacy claim, but only injunctive relief is available. *See Brahmana v. Henard*, No. C 10-01790 JW, 2011 WL 7293390, at *7 (N.D. Cal. Mar. 23, 2011) ("[W]ith regard to [the] California constitutional right to privacy, Cal. Const. art. I, § 1 'cannot properly be read as authorizing an action . . . for damages to remedy a violation of that provision.'" (second alteration in original) (quoting *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 324, n.2 (2002)), *aff'd in part*, 474 F. App'x 513 (9th Cir. 2012).