**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

PETER ZOCCO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NELNET, INC.

Defendant.

Case No. 5:25-cv-04470-NW

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: December 3, 2025
Time: 9:00 a.m.
Ctrm: 3, 5th Floor
Judge: Hon. Noël Wise

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 2

I. DEFENDANT IS NOT ENTITLED TO *YEARSLEY* IMMUNITY ........ 2

A. *Yearsley* Is An Affirmative Defense, Not A Jurisdictional Bar ........ 2

B. A Private Entity's Assertion Of *Yearsley* Immunity Hinges On The Scope Of Its Discretion, Not Merely A Contract With The Government ........ 5

II. PLAINTIFF SUFFICIENTLY PLEADS HIS FEDERAL WIRETAPPING CLAIMS ........ 6

A. Defendant Intercepted Plaintiff's Communications ........ 6

B. Defendant Intercepted The Contents Of Plaintiff's Communications ........ 7

C. Defendant Is Liable Under the ECPA's Crime-Tort Exception ........ 9

1. Defendant Was Not Acting Under The Color of Law ........ 9

2. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose ........ 9

III. THE HIGHER EDUCATION ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS ........ 10

A. If This Court Finds Plaintiff's ECPA Claim Survives This Motion To Dismiss, It Must Do The Same For Plaintiff's CIPA Claim ........ 11

B. Section 1098g Does Not Expressly Preempt Plaintiff's State Law Claims ........ 12

C. Implied Preemption Does Not Bar Plaintiff's State Law Claims ........ 13

IV. PLAINTIFF STATES A CLAIM UNDER THE CIPA ........ 15

A. Plaintiff Sufficiently Alleges Defendant Violated CIPA Section 631(a) ........ 15

B. Plaintiff Sufficiently Alleges Defendant Violated CIPA Section 632 ........ 15

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ........ 17

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ackerson v. Bean Dredging LLC*,
589 F.3d 196 (5th Cir. 2009) .... 3

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
790 F.3d 641 (6th Cir. 2015) .... 3

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) .... 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2

*Atay v. County of Maui*,
842 F.3d 688 (9th Cir. 2016) .... 13

*Auer v. Robbins*,
519 U.S. 452 (1997) .... 13

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*,
904 F.3d 755 (9th Cir. 2018) .... 11

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .... 8, 11, 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 9, 10

*Brown v. Mortensen*,
51 Cal.4th 1052 (2011) .... 11, 12

*Butters v. Vance Int'l, Inc.*,
225 F.3d 462 (4th Cir. 2000) .... 4

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
797 F.3d 720 (9th Cir. 2015) .... 2, 5, 6

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .... 7

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) .... 3, 5

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) .... 12, 13, 14

*Childs v. San Diego Fam. Hous., LLC*,
2020 WL 12689448 (S.D. Cal. Sept. 15, 2020) .......... 4

*Childs v. San Diego Family Housing LLC.*,
2021 WL 1897312 (2021) .......... 4

*Childs v. San Diego Family Housing LLC*,
22 F.4th 1092 (9th Cir. 2022) .......... 4

*Consumer Fin. Prot. Bureau v. Great Plains Lending, LLC*,
846 F.3d 1049 (9th Cir. 2017) .......... 12

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......... 6

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir. 2018) .......... 4

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 16

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. 2025) .......... 10

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .......... 3

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .......... 6

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 2

*Hyland v. Navient Corp.*,
2019 WL 2918238 (S.D.N.Y. July 8, 2019) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 15, 17, 18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 8

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8, 9, 10

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 15

*Keams v. Tempe Technical Inst., Inc.*,
39 F.3d 222 (9th Cir.1994) ........ 14

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 (2006) ........ 12

*Knox v. Brnovich*,
907 F.3d 1167 (9th Cir. 2018) ........ 11

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ........ 16

*Lonegan v. Hasty*,
436 F.Supp.2d 419. (E.D.N.Y. June 22, 2006) ........ 7

*Lopez v. Smith*,
203 F.3d 1122 ........ 2

*Marden v. LMND Medical Group, Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 10

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996) ........ 11, 14

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) ........ 10

*Nwauzor v. GEO Grp., Inc.*,
127 F.4th 750 (9th Cir. 2025) ........ 3, 4, 10, 11

*Olsen v. Nelnet, Inc.*,
392 F. Supp. 3d 1006 (D. Neb. 2019) ........ 12

*Posada v. Cultural Care, Inc.*,
66 F.4th 348 (1st Cir. 2023) ........ 3

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 7, 10

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........ 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 7

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 15

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
411 U.S. 1 (1973) .......... 11

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 1, 9, 10

*Shaw v. Grumman Aerospace Corp.*,
778 F.2d 736 (11th Cir. 1985) .......... 3

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 16, 18

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 17

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 2

*Spurlin v. Air & Liquid Sys. Corp.*,
568 F. Supp. 3d 1050 (S.D. Cal. 2021) .......... 3

*Student Loan Servicing All. v. D.C.*,
351 F. Supp. 3d 26 (D.D.C. 2018) .......... 14

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......... 11

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
951 F.3d 1142 (9th Cir. 2020) .......... 11, 14

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. 2009) .......... 17

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 15

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 16

*Valley Bank of Nev. v. Superior Court*,
15 Cal.3d 652 (1975) .......... 17

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 16

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*,
411 F. Supp. 3d 1070 (C.D. Cal. 2019) .......... 14

*Wyeth v. Levine*,
555 U.S. 555 (2009) .......... 13

*Yearsley v. W.A. Ross Const. Co.*,
309 U.S. 18 (1940) .......... 3, 9

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 8

**STATUTES**

5 U.S.C. § 552a(b) .......... 13

18 U.S.C. § 2510(8) .......... 8

20 U.S.C. § 1083 .......... 13

20 U.S.C. § 1098g .......... 13, 14

Cal. Fin. Code § 4050 .......... 10

Cal. Fin. Code § 4051 .......... 1

Cal. Fin. Code § 4052 .......... 17

Cal. Penal Code § 31 .......... 16

Cal. Penal Code § 631 .......... 12, 15, 16

Cal. Penal Code § 631(a) .......... 14, 15

Cal. Penal Code § 632 .......... 12, 15, 16

**REGULATIONS**

16 C.F.R. § 313 .......... 1

16 C.F.R. § 313.3 .......... 10, 17

**OTHER AUTHORITIES**

34 Fed. Reg. 44277 .......... 13

88 Fed. Reg. 47370 .......... 14

## INTRODUCTION

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. See 16 C.F.R. § 313; Cal. Fin. Code § 4051*; see also Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the ECPA and CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information). Despite such duties to prevent consumers' private information from disclosure, Defendant Nelnet Servicing, LLC ("Defendant") unlawfully intercepts and discloses its student loan borrowers' personal and financial information to Google LLC, an unknown third party, when borrowers navigate their private financial accounts on nelnet.studentaid.gov (the "Website").

Plaintiff is a resident of California who accessed Defendant's Website to make loan payments. Class Action Complaint ¶¶ 6–7 (ECF No. 1) ("Compl."). Unbeknownst to Plaintiff, the confidential information he provided in connection with his loan payments was intercepted by Defendant through its use of Google Analytics, and simultaneously disclosed to Google LLC ("Google"). *Id.* This included private information including Plaintiff's status as a loan borrower, the last four digits of his phone number, unique Google identifiers, and details about Plaintiff's use of the Website whilst logged in (e.g. when Plaintiff made a payment, whether Plaintiff was seeking different deferment, repayment, forbearance options, etc.). Compl. ¶¶ 67–81; Figs. 4–9. Such disclosures were not made to provide Plaintiff with services, but rather, to bombard him with harassing targeted advertising. Such conduct is unlawful under both state and federal law.

Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 19) ("MTD"). However, each argument raised by Defendant is without merit. For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the

complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

## I. DEFENDANT IS NOT ENTITLED TO *YEARSLEY* IMMUNITY

Defendant argues that it is entitled to *Yearsley* immunity (i.e., derivative sovereign immunity) related to its installation and use of Google Analytics on the Website because it contracted with the government. MTD at 14-19. That is wrong. The case law is clear—*Yearsley* is an affirmative defense, not a jurisdictional one. Unlike governmental immunity, the *Yearsley* defense is not absolute. Crucial to the analysis is that "*Yearsley*, is limited to cases in which a contractor '***had no discretion*** in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 733 (9th Cir. 2015) (emphasis added). Defendant had discretion here, and, regardless, whether Defendant had discretion is a question of fact inappropriate for determination on the pleadings.

### A. *Yearsley* Is An Affirmative Defense, Not A Jurisdictional Bar

Defendant claims "[d]erivative sovereign immunity must be treated as jurisdictional and

[is] properly brought under Rule 12(b)(1) based on the sweeping language of *Yearsley*." MTD at 15-16. That is wrong.

The majority of courts agree that *Yearsley* immunity is an affirmative merits defense, not a jurisdictional one. *Spurlin v. Air & Liquid Sys. Corp.*, 568 F. Supp. 3d 1050, 1052 (S.D. Cal. 2021) (holding *Yearsley* is affirmative defense against the merits of Plaintiffs' claims); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (concluding *Yearsley* immunity is not jurisdictional); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009); *Posada v. Cultural Care, Inc*., 66 F.4th 348, 353 (1st Cir. 2023) (adopting the opinion of the U.S. Dept. of State, which asserts "Yearsley is 'merely a defense to liability'"); *Cf. Shaw v. Grumman Aerospace Corp.,* 778 F.2d 736 (11th Cir. 1985) (categorizing *Yearsley* as a "government agency defense" implying it is an affirmative defense) (overruled on other grounds).

Although neither the Supreme Court nor the Ninth Circuit have explicitly ruled on whether *Yearsley* is a jurisdictional bar to litigation or an affirmative defense, existing case law indicates it is the latter. For example, in *Yearsley*, the Supreme Court's opinion turned on agency and the imposition of limiting principles which mimics qualified immunity (an affirmative defense), indicating *Yearsley* is also an affirmative defense. *Yearsley v. W.A. Ross Const. Co*., 309 U.S. 18, 21 (1940); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167–68 (2016) (treating *Yearsley* as derivative and conditional, suggesting it is an affirmative defense); *Harlow v. Fitzgerald*, 457 U.S. 800, 815, (1982) (Qualified or "good faith" immunity is an affirmative defense). Similarly, in *Nwauzor v. GEO Grp., Inc.*, the Ninth Circuit categorized derivative sovereign immunity as "a government contractor defense . . . [and] [a]contractor whose challenged conduct is not dictated by its contract with the government, ***but is rather within the contractor's discretion***, is not entitled to derivative sovereign immunity." 127 F.4th 750, 770 (9th Cir. 2025) (emphasis added). In denying the defendant's argument that it was entitled to sovereign immunity, the Court conducted a factually intensive inquiry and highlighted that the record must show the defendant had no discretion, a clear indicator that *Yearsley* is a merits-based affirmative defense. *Id.* at 770–71.

Further, the Ninth Circuit's opinion lacked any mention of *Yearsley* being a jurisdictional bar. *See generally Nwauzor*, 127 F.4th 750.

Defendant's reliance on Fourth Circuit case law is inapposite. The Fourth Circuit is the only Circuit to suggest *Yearsley* is a jurisdictional bar under 12(b)(1). *See generally Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018). But even in *Cunningham*, the Fourth Circuit struggled to apply *Yearsley* as a purely jurisdictional bar, opining that "discovery may be appropriate before granting a Rule 12(b)(1) motion to dismiss on this basis." *Id*. at 650–51. Defendant's reliance on *Butters v. Vance Int'l, Inc.* is similarly misplaced, as *Butters* is a case dealing with foreign sovereign immunity, not *Yearsley* immunity. 225 F.3d 462 (4th Cir. 2000) (applying the Foreign Sovereign Immunities Act).

Defendant further misapprehends existing case law in claiming "Ninth Circuit precedent precludes it from reaching from reaching a conclusion other than *Yearsley* being jurisdictional." MTD at 16. Defendant relies heavily on *Childs v. San Diego Family Housing LLC* to support its erroneous contention. 22 F.4th 1092 (9th Cir. 2022). But *Childs* did not hold that *Yearsley* was jurisdictional, rather, it declined to decide the question altogether. *Id*. at 1095. Critically, a brief from the United States as Amicus Curiae filed in the same action stated, "[o]rders denying a motion to dismiss under the *Yearsley* doctrine are not immediately appealable because the doctrine affords ***only a defense to liability on the merits, not an immunity from suit***." Brief for the United States as Amicus Curie, *Childs v. San Diego Family Housing LLC*., 2021 WL 1897312, at *1 (2021) (emphasis added). In fact, the District Court in *Childs* refused to apply *Yearsley* as a jurisdictional bar, instead finding "it is reasonable to read *Yearsley* as recognizing *a defense* to liability for government contractors, not absolute immunity from being sued." *Childs v. San Diego Fam. Hous., LLC*, 2020 WL 12689448, at *6 (S.D. Cal. Sept. 15, 2020).

Because *Yearsley* immunity is an affirmative defense, it is inappropriate for the Court to grant dismissal before there is a developed factual record as to the discretion Defendant had in implementing Google Analytics on the Website.

### B. A Private Entity's Assertion Of *Yearsley* Immunity Hinges On The Scope Of Its Discretion, Not Merely A Contract With The Government

Defendant argues that it is entitled to "*Yearsley* immunity because it complied with its valid contract with the [Department of Education ("DOE")]." MTD at 17. That is wrong.

Regardless of whether *Yearsley* should be brought under 12(b)(1) or 12(b)(6), ruling on this matter is inappropriate at this early stage of litigation. As the Supreme Court recognized in *Campbell-Ewald*, the availability of the *Yearsley* defense turns on a factually intensive inquiry "of the scope of valid government authorization, and whether the contractor exceeded that scope." 577 U.S. 153, 166–67. The factual nature of these questions makes them ill-suited for resolution on a motion to dismiss. *Cabalce v. Thomas E. Blanchard & Assocs., Inc*. is instructive. 797 F.3d 720, 732 (9th Cir. 2015). In *Cabalce*, the court stressed that *Yearsley* extends only to situations where the contractor "had no discretion in the design process and completely followed government specifications." *Id*. Where contractors exercise any discretion in their operations, the defense does not apply. *Id*. Critically, at this early juncture, the record is devoid of sufficient facts to rule on these issues.

In any event, Defendant erroneously contends it is entitled to the same degree of immunity as the DOE because "it complied with its valid contract with the DOE[.]" MTD at 17. However, the mere existence of a contract with the DOE does not entitle Defendant to the same immunity as a governmental entity. Rather, the standard for whether *Yearsley* applies is a narrow one, requiring Defendant to prove it had no discretion when complying with government specifications. *Cabalce*, 797 F.3d at 732.

Even if the Court were to entertain Defendant's theory, Plaintiff and Class Members plausibly allege Defendant's conduct falls outside of the protection of *Yearsley*. Should this Court consider ECF Nos. 19-1 and 19-2 in its ruling, Defendant failed to prove anything more than the mere existence of a contract. Indeed, the Business Operations Change Request Form (ECF 19-2) (the "Change Request") ***only*** required Defendant to install Google Analytics as part of single sign-on—it did not require Defendant to disclose to Google the personally identifiable information of Plaintiff and Class Members, nor did the Change Request require Defendant's embed Google

Analytics on Plaintiff and Class Members use of the Website ***after sign-on***. *See generally* Change Request.

Plaintiff's allegations that Google Analytics "immediately intercepts every interaction with the webpage . . . including what pages they visit and click on" (Compl. ¶50) and that Defendant's installation of Google Analytics allows "tracking [to continue] ***after users have logged into their account portals*** where users view financial statements and pay" (Compl. ¶71) indicates that Defendant exceeded the scope of the alleged Change Request by exercising independent discretion. There are several different ways in which Google Analytics can be installed on the Website and the Change Order was silent as to how it should be installed. However, the only plausible reading of the Change Order would be that Defendant was required to install Google Analytics in a lawful manner, rather than an unlawful manner. At bare minimum, it presents an issue of fact inappropriate for resolution without a developed record. *See Hicks v. PGA Tour, Inc.,* 897 F.3d 1109, 1118 (9th Cir. 2018) ("If a contract is ambiguous, it presents a question of fact inappropriate for resolution on a motion to dismiss"); *see generally Cabalce v. Thomas E. Blanchard & Assocs., Inc*., 797 F.3d 720, 731–33 (9th Cir. 2015) (finding a contractor unable to assert a *Yearsley* defense in a wrongful death suit over a firework explosion despite the contractor's governmental contract to "handle, store, and destroy" the seized fireworks that caused the explosion).

## II. PLAINTIFF SUFFICIENTLY PLEADS HIS FEDERAL WIRETAPPING CLAIMS

### A. Defendant Intercepted Plaintiff's Communications

Defendant argues that there was no there was no "interception" because the Website is the only "device through which [Defendant] acquired [Plaintiff's] information[.]" MTD at 19. That is wrong.

In support of its argument, Defendant relies on *Crowley v. CyberSource Corp.*, where the court's reasoning turned on the fact that there was no interception because there was no device other than "the drive or server on which the [communication] was received[,]" which was then conveyed to a third party. 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001).[1] The Ninth Circuit has

[1] Contrary to Defendant's assertions, Plaintiff's claims are not foreclosed by *Crowley* as they are premised on procurement and direct interception theories, not aiding and abetting. *Compare* MTD

rejected this reasoning. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (adopting "the First and Seventh Circuits' understanding that simultaneous, unknown duplication and communication of [web requests does] not exempt a defendant from liability under the party exception").

Here, Plaintiff's Complaint contains detailed allegations about Defendant's real-time facilitation of Google's wiretapping by using HTTP Requests, cookies, and HTTP responses to simultaneously send Plaintiff's communications with the Website to Google. Compl ¶¶ 36–81; *see also id*. ¶ 103 ("Defendant intercepted—in real time—Plaintiff's and Class Members' electronic communications via the tracking technology provided by Google on its website."). Moreover, unlike the *Crowley* plaintiff who alleged only one device, Plaintiff alleges multiple. Compl. ¶ 52 ("Defendant is handing their users a tapped device, and once the Webpage is loaded onto the users' browser, the software-based wiretap is quietly waiting for private communications on the Website to trigger the tap, which intercepts those communications intended only for the Defendant and transmits those communications to Google"); *id*. ¶ 129 ("Google Analytic services are 'electronic amplifying or recording device[s]'").

Even if the Court entertains Defendant's contention it was "the second party" to Plaintiff's Communications, derivative liability can still be imposed. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly.").

### B. Defendant Intercepted The Contents Of Plaintiff's Communications

Defendant posits that none of the information intercepted reveals anything "concerning the substance, purport, or communications associated with it." MTD at 20 (internal quotations omitted). That is wrong because Defendant mischaracterizes the information being intercepted.

---

n. 6; *with Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (acknowledging the ECPA encompasses procurement); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024); *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025); *Lonegan v. Hasty*, 436 F.Supp.2d 419, 427–28. (E.D.N.Y. June 22, 2006)

Courts interpret "content" under the CIPA and ECPA as "the intended message conveyed by the communication . . . not includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (internal citations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts conduct a "case-specific" analysis to distinguish "content" from record information; this analysis focuses on "how much information would be revealed by the information's tracking and disclosure." *Yoon*, 2024 WL 5264041, at *5.

Under the ECPA, "content" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (*Meta I*). The "post-domain name portions" of website URLs—everything after ".com"—also disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user"). In the Ninth Circuit, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014).

That is precisely what Plaintiff has alleged here. As detailed in his Complaint, and as seen from the network traffic observed on the Website, Defendant intercepts Plaintiff's and Class Members' identities through Google Analytics, which it links to their interactions on the Website. Compl. ¶¶ 67–81; *see e.g.,* Fig. 5 (disclosing a borrower's identity and status as having student loans and making a payment); Fig. 7 (disclosing a borrower's identity and inquiry into repayment postponement options because the borrower cannot afford their payment). Ninth Circuit precedent is clear, communications intercepted by tracking technologies, like Google Analytics, constitute

"contents" if they reveal the substance of protected queries, as is the case here. *Meta Pixel I*, 647 F.Supp.3d at 795–96 (observing that "log-in buttons and…descriptive URLs…are 'contents' within the meaning of the statute . . . because they concern the substance of the communication.").

### C. Defendant Is Liable Under the ECPA's Crime-Tort Exception

#### 1. Defendant Was Not Acting Under The Color of Law

Pointing to its "contract with the DOE and pursuant to the HEA" Defendant states it is entitled to the ECPA exception for acting under the color of law. MTD at 21. Defendant is wrong.

Defendant's argument that the § 2511(c)(2) safe harbor applies misstates Plaintiff's allegations and the law. A government contractor is not cloaked in immunity when "the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." *Yearsley*, 309 U.S. at 21; *supra-Sec.* I(B) (Defendant's installation of Google Analytics goes beyond the scope of the alleged Change Request); Compl. ¶¶ 50, 71. The cited HEA provisions (§§1082(m)(3), 1087f(b), 1092b(a), 1092b(g)(1)) regulate how loan servicers like Defendant collect and transmit borrower information to the DOE, and what information must be disclosed to borrowers. They do not mandate, or even reference, the implementation of third-party tracking technologies or disclosure of sensitive communications to private third-parties like Google. MTD at 21.

#### 2. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues the consent exemption to the ECPA applies because Defendant was a party to the communication. MTD at 21-22. That is wrong.

The crime-tort exception forecloses consent by a party as a defense to the ECPA "where 'the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). *Shah v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Id.* at 1041. There, the court denied the

defendant's motion to dismiss, holding the defendant's actions were allegedly tortious. *Id.* at 1053. Here, likewise, Plaintiff alleged Defendant disclosed his personally identifiable information and sensitive financial information in violation of the Gramm-Leach-Bliley Act (the "GLBA") (16 C.F.R. § 313.3) and the California Financial Information Privacy Act ("CalFIPA") (Cal. Fin. Code § 4050, *et seq*.). Compl. ¶¶ 20–30.

Defendant's reliance on *In re Meta Pixel* to support its assertion that the ECPA is "inapplicable where the defendant's primary motivation was to make money" is misplaced. MTD at 22 (citing *In re Meta Pixel*, 647 F. Supp 3d 778, 797 (N.D. Cal. 2022)). In the same case the court acknowledged "[t]here is a not-insignificant chance . . . that plaintiffs may be able to show that the crime-tort exception applies." *Id.* Indeed, courts throughout the Ninth Circuit recognize "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024); *Brown*, 525 F. Supp. 3d at 1067 ("[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception," because it "violate[s] state law . . . "); *Marden v. LMND Medical Group, Inc.,* 2024 WL 4448684, at *2 (N.D. Cal. July 3, 2024) (quoting *Brown* and finding that the plaintiff "plausibly alleges tortious intent").

Defendant's reliance on *Goulart v. Cape Cod Healthcare, Inc*., 2025 WL 1745732 (D. Mass. 2025), a non-binding, out-of-circuit ruling, is also unavailing. As an initial matter, *Goulart*, only addresses claims under ECPA, not CIPA. *Id.* at *2-3. And moreover, to the extent that *Goulart* supports dismissal, it is directly contrary to Judge Thompson's decision in *Shah*. This Court should follow *Shah*.

## III. THE HIGHER EDUCATION ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS

Federal law only preempts state law in two instances: (1) when a party cannot comply with both federal and state law or (2) when state law poses an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 768 (9th Cir. 2025) (citing *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724

(9th Cir. 2016)). Crucially, there is a strong presumption against preemption "when a state regulates in an area of historic state power." *Knox v. Brnovich*, 907 F.3d 1167, 1174 (9th Cir. 2018). Once triggered, the presumption against preemption applies "even if the law 'touch[es] on' an area of significant federal presence." *Nwauzor*, 127 F.4th at 768. The Higher Education Act falls squarely within this heightened presumption because education, consumer protection, and informational privacy are all traditionally state regulated. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) ("education is perhaps the most important function of state and local governments"); *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011) ("Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area"); *Brown v. Mortensen*, 51 Cal.4th 1052, 1060 (2011) ("State statutory and common law protection of interests in informational privacy long predates federal regulation . . . It thus comprises a field traditionally occupied by the states").[2]

### A. If This Court Finds Plaintiff's ECPA Claim Survives This Motion To Dismiss, It Must Do The Same For Plaintiff's CIPA Claim

As a preliminary matter, if the Court determines Plaintiff's ECPA claim survives Defendant's Motion, it logically follows the Court must reach the same conclusion for Plaintiff's CIPA claims. Because the analysis for ECPA claims and CIPA claims is the same, to dismiss a CIPA claim on preemption grounds while allowing a federal ECPA claim to proceed would create an inconsistent outcome. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 381 (1996) ("[I]f two Federal statutes are 'capable of coexistence,' the statutes should be harmonized, and each should be regarded as effective unless there is a 'positive repugnancy' or an 'irreconcilable conflict' between the laws"); *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1156 (9th Cir. 2020) (same); *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 761 (9th Cir. 2018) (same); *with Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act"); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026 (N.D. Cal. 2014) (same).

[2] Defendant neglects to address how it overcomes the heightened presumption against preemption despite it being clear that Plaintiff's claims fall squarely within the heightened presumption against preemption.

**B. Section 1098g Does Not Expressly Preempt Plaintiff's State Law Claims**

Defendant argues Section 1098 of the Higher Education Act ("HEA") expressly preempts Plaintiff's CIPA and California Constitutional claims because these claims would require loan providers, including Defendant, to disclose their use of third-party tracking technologies such as Google Analytics. MTD at 25–26. That is wrong.

"Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws." *Hyland v. Navient Corp.*, 2019 WL 2918238, at *7 (S.D.N.Y. July 8, 2019). When a law "by its terms applies broadly and without exception, it is properly characterized as a law of general applicability." *Consumer Fin. Prot. Bureau v. Great Plains Lending, LLC*, 846 F.3d 1049 (9th Cir. 2017). "The HEA and its associated regulations only require that particular disclosures are to be made in the delivery of federal student loans and generally prescribes how those disclosures should be made. ***It does not preempt the enforcement of a statute of general applicability under a state's traditional police power***." *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1021 (D. Neb. 2019) (emphasis added); *Aguayo v. U.S. Bank*, 653 F.3d at 917 (consumer protection is traditionally within the state police power); *Brown v. Mortensen*, 253 P.3d at 526 (2011) (informational privacy is traditionally within the state police power).

Here, CIPA was enacted as a "broad, protective invasion-of-privacy statute in response to what [the California Legislature] viewed as a serious and increasing threat to the confidentiality of private communications resulting from then recent advances in science and technology" such that CIPA is a law of general applicability. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 115 (2006). The state law provisions at issue—the California Constitution and California Penal Code Sections 631 632—do not mandate disclosures, rather, they regulate conduct in the form of unlawful interception and recording of private communications. Compl. ¶¶ 12–19; 114–154.

Defendant's interpretation of *Chae v. SLM Corp.* is overbroad. 593 F.3d 936 (9th Cir. 2010). In *Chae*, the court articulated that Section 1098g's express preemption was limited to disclosure provisions and misrepresentation claims (under California's Unfair Competition Law and California's Consumer Legal Remedies Act) relating to *billing statements* because the claims required alternate disclosures. Contrastingly, CIPA and the California Constitution do not dictate

what information must be disclosed in servicer communications or what information student loan borrowers must receive. 20 U.S.C. § 1098g. Rather, Plaintiff's claims regulate *conduct* in the form of unlawful interception and recording of private communications.[3] Compl. ¶¶ 12–19, 114–139.

Crucially, "an agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with the regulation.'" *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In 2021, the DOE cautioned against broad readings of 1098g preemption, explaining "Congress consciously opted to displace State authority only in these limited particulars and did not intend or provide for broad field preemption of State laws governing student loan servicing." 34 Fed. Reg. 44277. The DOE further cautioned against "broad field preemption of State laws governing student loan servicing." *Id.* The overly broad reading Defendant applies to section 1098g in its Motion to Dismiss is irreconcilable with the DOE's own position. This Court should adopt the DOE's 2023 interpretation that 1098g disclosure is limited only to disclosure requirements that conflict with 20 U.S.C. § 1083.

### C. Implied Preemption Does Not Bar Plaintiff's State Law Claims

Defendant argues "Plaintiff's CIPA and California constitutional claims are obstacle preempted" by the HEA. MTD at 27. That is wrong.

The Ninth Circuit treads carefully when conflict preemption (i.e. obstacle preemption) arises under state law regulations traditionally falling within the scope of state police powers. *Chae*, 593 F.3d at 944 (9th Cir. 2010); *Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016). Supreme Court precedent is clear: a court must start with the assumption that a state's historic police powers cannot be superseded without a "clear and manifest purpose of Congress." *Id.* (citing *Wyeth v. Levine,* 555 U.S. 555, 566 (2009)). A court should discern congressional objectives by "examining the federal statute as a whole and identifying its purpose and intended

[3] In *Calvillo Manriquez v. Devos*, the court found the DOE's sharing of federal student loan borrowers' private information with the Social Security Administration violated the Privacy Act (5 U.S.C. § 552a(b)), highlighting that HEA imposes limitations on data sharing.

effects." *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1089 (C.D. Cal. 2019).

*First*, Plaintiff's CIPA claims cannot be conflict preempted. The analysis for ECPA claims and CIPA claims is the same, therefore, to dismiss a CIPA claim on preemption grounds while allowing a federal ECPA claim to proceed would create an inconsistent outcome. *Matsushita Elec. Indus. Co.*, 516 U.S. at 381 ("[I]f two Federal statutes are 'capable of coexistence,' the statutes should be harmonized, and each should be regarded as effective unless there is a 'positive repugnancy' or an 'irreconcilable conflict' between the laws"); *Swinomish Indian Tribal Cmty.*, 951 F.3d at 1156 (same); *Brodsky,* 445 F. Supp. 3d at 127 ("[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act").

*Second*, Defendant misapprehends *Student Loan Servicing Alliance v. D.C.* in arguing that "any state law that interferes with the DOE acquiring [information about student loans] is subject to obstacle preemption." MTD at 28 (citing *Student Loan Servicing All. v. D.C.*, 351 F. Supp. 3d 26, 62 (D.D.C. 2018)). When "the court in *Student Loan Servicing Alliance* considered the District of Columbia's procedures for protecting privacy, resolving complaints, and mandating compliance with timelines, it concluded that '[u]pon closer inspection of the state and federal provisions, it is apparent that there is no actual conflict on the grounds of impossibility.'" 86 Fed. Reg. 47370, 47372 (Jul. 24, 2023) (citing 351 F. Supp. 3d at 60). Here, all of Plaintiff's claims are grounded in privacy, and thus, not actually in conflict with section 1098g. 88 Fed. Reg. 47370, 47372–3 3; Compl. ¶¶ 90–154. To hold otherwise would imply the Higher Education Act would be to trigger field preemption, which the Department of Education and the Ninth Circuit has already rejected. *Chae*, 593 F.3d at 941–42 ("[W]e have previously held that field preemption does not apply to the HEA."); *Keams v. Tempe Technical Inst., Inc.,* 39 F.3d 222, 225–226 (9th Cir.1994) ("It is apparent ... that Congress expected state law to operate in much of the field in which it was legislating."); 88 Fed. Reg. at 47370.

## IV. PLAINTIFF STATES A CLAIM UNDER THE CIPA

### A. Plaintiff Sufficiently Alleges Defendant Violated CIPA Section 631(a)

Defendant argues it is exempt from Section 631(a) liability because it was a party to the communications. MTD at 29. That is wrong.

While a direct party to a communication may be exempt under very limited circumstances, that exemption is entirely inapplicable when the party "engage[s] in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) ("[A] party to a conversation can record it without the other party's knowledge without incurring Section 631 liability.") (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)).

Defendant also strings together fragments of Plaintiff's Complaint to suggest it used Google Analytics as nothing more than a tool. MTD at 19. That is wrong. Defendant ignores paragraph 119 of the Complaint, wherein Plaintiff alleges "Google is a separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device [and] Google has the capability to use and does use the wiretapped information for its own purposes." Compl. ¶ 119 (internal citations and quotations omitted). Additionally, Plaintiff alleges he did not consent to Defendant's use of Google Analytics, nor does Defendant contend otherwise. Compl. ¶¶ 5–6, 17, 29, 120, 123, 138; MTD at 26:26–28. Taken together, these allegations plausibly establish (1) Defendant enabled Google's third-party interceptions, and (2) Defendant "aided, agreed with, or conspired with" third-party Google to effectuate unlawful interceptions under section 631(a).

### B. Plaintiff Sufficiently Alleges Defendant Violated CIPA Section 632

Defendant posits it is not liable under section 632 because it was a party to Plaintiff's communications to the Website such that there was no eavesdropping, and that Plaintiff failed to allege recording. That is wrong.

*First,* Defendant's assertion that it is not liable for eavesdropping because it was a party to the communication is unpersuasive. MTD at 30. The principal case upon which Defendant relies

equates eavesdropping under section 632 to eavesdropping under section 631. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024). Although not explicit section 632 allows for derivative liability. "All persons concerned in the commission of a crime … or aid and abet in its commission … are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). As a result, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Thus, Plaintiff plausibly pleads Defendant is liable under the eavesdropping theory of section 632 under a theory of derivative liability. Compl. ¶¶ 33 (Defendant enables "Google Analytics to eavesdrop on [Plaintiff and Class Members] confidential communications"), *id.* ¶¶ 136–38, 147.

*Second*, Defendant's argument that Plaintiff failed to allege recording erroneously relies on its unsupported claim that section 632 is only concerned with "recording sounds." MTD at 30. However, it is well-established computer software that record communications with websites can be a "recording device" under 632, which necessitates an implicit finding that section 632 extends beyond sounds. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856–57 (W.D. Wash. 2024); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (collecting cases finding that "software is a device under section 632(a)"). Here, Plaintiff's Complaint details how Google Analytics software is a recording device. Compl. ¶¶ 36–66, 119, 129, 131, 138.

Lastly, Defendant argues, incorrectly, that Plaintiff's section 632 claim is unsustainable because there is no mention of liability for aiding or abetting. MTD at 31. However, California law makes clear that "[a]ll persons concerned in the commission of a crime … or [who] aid and abet in its commission are principals in any crime so committed." Cal. Penal Code § 31; *Vera v. O'Keefe*, 791 F.Supp.2d 959, 965 (S.D. Cal. Oct. 2011) (finding that Cal. Penal Code § 31, when

applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation.").

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).

*First*, Plaintiff alleges—and Defendant does not dispute—a legally protected privacy interest in his financial information. Compl. ¶¶ 3–4, 20–30, 32. Case law supports this determination. *See, e.g., Smith v. YETI Coolers, LLC,* 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) ("sensitive financial information [falls into the category of legally protected information]"); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. 2009) ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652, 656 (1975) ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs").

*Second*, Plaintiff's expectation in the privacy of his financial information is reasonable (and undisputed by Defendant). Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) his identity, (2) partial phone number, (3) partial email, (4) IP address, (5) device information, (6) status as having student loan debt, and (7) nonpublic URLs with information about his student loans. See Compl. ¶¶ 2–6, 31, 72, 74–79. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 et seq. (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer).

*Third*, Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as

the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (same). A true holistic consideration in this case should lead to the determination that Plaintiff's data constitutes an egregious breach. Defendant cites numerous cases dealing with personal information not relevant to Plaintiff's claims. *See* MTD at 31–32. Here, contemporary "social norms" are far more likely to render the disclosure of student loan status, for instance, as being highly offensive. *See* Compl. ¶3 ("[M]any student loan borrowers experience feelings of stress, anxiety, and shame related to their student loan debt.").

Defendant's case law is unpersuasive. Here, Defendant's disclosure goes beyond "routine commercial behavior" because surreptitiously Defendant shared sensitive and confidential information with Google while Plaintiff was logged into Defendant's portal. Defendant's allegation that "the most intimate information . . . [Defendant] disclosed includes partial email addresses, partial phone numbers, IP addresses, and (vaguely phrased) information related to [] financial services" misapprehends Plaintiff's allegations. MTD at 32. Indeed, Plaintiff alleges Defendant, through Google's tracking technologies, disclosed Plaintiff's and other borrowers' IP addresses, device information, User-IDs, as well as the last four digits of their phone number, and partial email addresses, along with their nonpublic financial interactions with the Website. Compl. ¶ 74. This information allows Google to link a borrower's specific identity to their nonpublic financial interactions with Defendant in violation of the GLBA and CalFIPA. Compl. ¶ 75, *see also* Compl. ¶¶ 67–81.

Crucially, the Ninth Circuit explained the inquiry into whether an intrusion is highly intrusive is a holistic one, often not fit to be resolved at the pleadings stage. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (explaining open factual questions pertaining to the degree

of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss). Dismissal is therefore inappropriate.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to amend the Complaint.

Dated: October 3, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*