BROWNSTEIN HYATT FARBER SCHRECK, LLP
Jonathan C. Sandler, Bar No. 227532
jsandler@bhfs.com
Alex Wolfe, Bar No. 339396
awolfe@bhfs.com
2029 Century Park East, Suite 950
Los Angeles, California 90067-2918
Telephone: 310.500.4600
Facsimile: 310.500.4602

Attorneys for Defendant
NELNET SERVICING, LLC erroneously named as
NELNET, INC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

PETER ZOCCO, individually and on behalf of all other similarly situated,

Plaintiff,

v.

NELNET, INC.,

Defendant.

Case No. 5:25-cv-04470-NW

**NELNET SERVICING, LLC erroneously named as NELNET, INC., INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

Date: December 3, 2025
Time: 9:00 a.m.
Ctrm: 3, 5th Floor

Judge: Hon. Noël Wise

Defendant NELNET SERVICING, LLC erroneously named as NELNET, INC. ("Nelnet") hereby files its Reply ("Reply") to Plaintiff's Opposition to Motion to Dismiss (Document No. 26) (the "Opposition") filed by Plaintiff PETER ZOCCO and in further support of Nelnet's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Document No. 19) (the "Motion"), states as follows:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. *Yearsley* Immunity Is Jurisdictional and Extends to Nelnet's Actions. 1

1. *Yearsley* is jurisdictional and raised under Rule 12(b)(1). ..... 1

2. Nelnet is entitled to *Yearsley* Immunity. ..... 4

B. Zocco Failed to State an ECPA Claim. ..... 5

1. Zocco Failed to Plead Interception. ..... 5

2. Zocco Failed to Plead Contents. ..... 6

3. Nelnet Qualifies for the Party Exception to ECPA liability. ..... 7

a. Nelnet was Acting Under Color of Law. ..... 7

b. The Crime-Tort Exception does not Apply to Nelnet. ..... 7

C. The HEA Preempts Zocco's Claims ..... 10

1. The Similarity of CIPA Claims to ECPA Claims does not Save Them from Preemption. ..... 10

2. Section 1098g Expressly Preempts Zocco's CIPA and California Claims. ..... 10

3. The HEA Obstacle Preempts Zocco's CIPA and California Constitution Claims. ..... 11

D. Zocco Failed to State a Claim for Violation of CIPA. ..... 12

1. Zocco Failed to State a Claim under Section 631 of CIPA. ..... 12

2. Zocco Failed to State a Claim under Section 632 of CIPA. ..... 14

E. Zocco Failed to State a Claim for Invasion of Privacy. ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerson v. Bean Dredging LLC*,
589 F.3d 196 (5th Cir. 2009) ........ 3

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
790 F.3d 641 (6th Cir. 2015) ........ 3

*Aguilera v. Molina*,
No. 18-CV-03389-HSG, 2023 WL 2065046 (N.D. Cal. Feb. 16, 2023) ........ 8, 9, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7, 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 9

*Butters v. Vance Int'l, Inc.*,
225 F.3d 462 (4th Cir. 2000) ........ 3, 4

*Chae v. SLM Corp., 593 F.3d 936 (9th Cir. 2010)* ........ 11

*Childs v. San Diego Fam. Hous. LLC*,
22 F.4th 1092 (9th Cir. 2022) ........ 4

*Childs v. San Diego Fam. Hous., LLC*,
No. 19CV2329 JM (MDD), 2020 WL 12689448 (S.D. Cal. Sept. 15, 2020) ........ 3, 4

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d (N.D. Cal. 2001) ........ 5, 6

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir. 2018) ........ 3

*Doe v. Tenet Healthcare Corp.*,
No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956 (E.D. Cal. June 9, 2025) ........ 8, 9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*Esquivel v. United States*,
21 F.4th 565 (9th Cir. 2021) .......... 5

*In re Facebook, Inc. Internet Tracking Litigation Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 5, 12, 13

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .......... 6, 13

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 15

*Goulart v. Cape Cod Healthcare, Inc.* .......... 7, 9, 12

*Hyland v. Navient Corp.*,
2019 WL 2918238 (S.D.N.Y. July 8, 2019) .......... 10

*In re KBR, Inc., Burn Pit Litigation*,
744 F.3d 326 (2014) .......... 3

*Konop v. Hawaiian Airlines, Inc.* .......... 13

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8

*Myers v. United States* .......... 4

*Nwauzor v. GEO Grp., Inc.*,
127 F.4th 750 (9th Cir. 2025) .......... 2, 3

*Olsen v. Nelnet, Inc.*,
392 F. Supp. 3d 1006 (D. Neb. 2019) .......... 10

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) .......... 15

*Posada v. Cultural Care, Inc.*,
66 F.4th 348 (1st Cir. 2023) .......... 1

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*, No. CV 24-10482 PA (PDX), 2025 WL 2427844 (C.D. Cal. July 22, 2025) ........ 11

*Sams v. Yahoo!, Inc.*, No. CV-10-5897-JF HRL, 2011 WL 1884633 (N.D. Cal. May 18, 2011) ........ 7

*Shah v. Cap. One Fin. Corp.* ........ 8, 9

*Shaw v. Grumman Aerospace Corp.*, 778 F.2d 736 (11th Cir. 1985) ........ 1

*Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881 (9th Cir. 2005) ........ 14

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 15

*Spurlin v. Air & Liquid Sys. Corp.*, 568 F. Supp. 3d 1050 (S.D. Cal. 2021) ........ 1

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 ........ 5

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019) ........ 11, 12

*Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940) ........ *passim*

**Statutes**

18 U.S.C. § 2510(8) ........ 7

18 U.S.C. § 2511(2)(c) ........ 7

20 U.S.C. § 1098g ........ 10, 11

Cal. Penal Code §§ 631(a), 632 ........ 2, 12, 14, 15

California Financial Informational Privacy Act ........ 9

ECPA ........ *passim*

Graham-Leach-Bliley Act ........ 9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

**Other Authorities**

86 Fed. Reg. 44277 ........ 11

86 Fed. Reg. at 44279 ........ 11

California Constitution ........ 10, 11

Rule 12(b)(1)........ *passim*

Rules 12(b)(1) and 12(b)(6)........ 1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Motion established several bases for dismissing the Complaint: *Yearsley* immunity is jurisdictional and applies to Nelnet; Zocco's allegations fail to satisfy the interception and content elements of an ECPA claim and qualifies under the party exception to the ECPA; Zocco's CIPA claims are express and obstacle preempted by the HEA; Zocco fails to state plausible CIPA claims; and Zocco fails to state a claim for invasion of privacy.[1]

The Opposition attempts to rebut the foregoing with surface-level analysis, mischaracterizations of precedent, and reimagination of Zocco's vague and internally inconsistent allegations. These tactics cannot save Zocco's Complaint, which must be dismissed under Rules 12(b)(1) and 12(b)(6).

## II. ARGUMENT

### A. *Yearsley* Immunity Is Jurisdictional and Extends to Nelnet's Actions.

1. *Yearsley* is jurisdictional and raised under Rule 12(b)(1).

Zocco mischaracterizes the weight of authority holding *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), is not jurisdictional. *See* Opp'n pp.2:26-4:26. The split among circuit courts that have squarely addressed this issue is two-to-one, with the Fifth and Sixth Circuits holding *Yearsley* is not jurisdictional and the Fourth Circuit holding it is. *See* Motion p.16 n.5; *Spurlin v. Air & Liquid Sys. Corp.*, 568 F. Supp. 3d 1050, 1052 (S.D. Cal. 2021) (outlining circuit split). Zocco cites the First and Eleventh Circuits as tipping the scale to four-to-one, but these circuits did not reach the issue. *See* Opp'n p.3:3-11; *Posada v. Cultural Care, Inc.*, 66 F.4th 348, 363 (1st Cir. 2023) ("[W]e need not—and do not—decide in this appeal whether *Yearsley* recognizes an immunity from suit rather than merely a defense to liability[.]"); *Shaw v. Grumman Aerospace Corp.*, 778 F.2d 736, 740

[1] All terms used herein have the same meaning as given to them in the Motion.

(11th Cir. 1985) (declining "appellant's invitation to consider its defense under *Yearsley*" because "[t]he agency/sovereign immunity theory was neither presented fully to nor ruled on by the court below").

Zocco posits that *Yearsley* "indicat[es]" that derivative sovereign immunity is an affirmative defense because it mentions "agency" and "limiting principles," which "mimic[] qualified immunity." Opp'n p.3:14-16. But *Yearsley* mentions neither "qualified immunity" nor an "affirmative defense." *See* 309 U.S. 18. Zocco ignores Nelnet's quotations from *Yearsley* broadly equating derivative sovereign immunity with governmental immunity. *See* Motion p.16:6-16.

*Campbell-Ewald Co. v. Gomez* does not mention an "affirmative defense" either. *See* 577 U.S. 153 (2016); Opp'n p.3:17-18. While *Campbell-Ewald* observed that *Yearsely* "immunity, . . . unlike the sovereign's, is not absolute" and that the petitioner could "offer no authority for the notion that private persons performing Government work acquire the Government's embracive immunity[,]" the opinion goes on to state that "when a contractor *violates both federal law and the Government's explicit instructions*, . . . no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." 577 U.S. at 166, 167 (emphasis added). In other words, contractors are not entitled to the Government's embracive immunity *simply because they are contractors*, but rather must comply with the contract and federal law to obtain immunity, both of which are required under and satisfied by compliance with the *Yearsley* standard. *See id.* *Campbell-Ewald* thus did not disavow that *Yearsley* immunity is jurisdictional, but rather stated a necessary condition for such immunity to apply to contractors.

Zocco misconstrues *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750 (9th Cir. 2025), which never mentions "affirmative defense" and did not "clear[ly] indcat[e] that *Yearsley* is a merits-based affirmative defense" simply because it "conducted a factually intensive inquiry." Opp'n pp.3:19-4:2. Because *Yearlsey* is jurisdictional, it can be raised under Rule 12(b)(1), which—although unnecessary here given that

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

the Change Request explicitly requires use of Google Analytics—allows a fact-intensive inquiry by permitting discovery and consideration of evidence outside of the Complaint. *See* Motion p.17:19-25; Ex. 1 to Motion; *Childs v. San Diego Fam. Hous., LLC*, No. 19CV2329 JM (MDD), 2020 WL 12689448, at *3 (S.D. Cal. Sept. 15, 2020). That *Nwauzor* considered derivative sovereign immunity at a later stage in litigation does not preclude derivative sovereign immunity from being raised under Rule 12(b)(1). Zocco's observation that *Nwauzor* "lacked any mention of *Yearlsey* being a jurisdictional bar" is self-defeating because it reflects only that *Nwauzor* did not reach the issue. Opp'n p.4:1-2.

Zocco fails to discredit the Fourth Circuit's cases. *See* Opp'n p.4:3-10. The slim majority of circuits holding contrary to the Fourth Circuit posit that *Yearsley* is not jurisdictional because *Yearsley* does not mention "sovereign immunity" or "jurisdictional." *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009). These circuits overlook that *Yearsley* does not describe the immunity as a merits defense either, and they fail to reconcile the sweeping language of *Yearsley* equating the immunity of a contractor who satisfies the *Yearsley* standard with the government's immunity. *See In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 342 (2014) (quoting *Yearsley's* broad language to infer that "a government contractor is not subject to suit" under the *Yearsley* test); Motion pp.15:27-16:16.

*Cunningham's* suggestion that discovery may be appropriate under Rule 12(b)(1) is an acknowledgement that certain discovery *can* be conducted on a jurisdictional challenge under *Yearsley*, not a concession that *Yearsley* is a merits defense. *See* Opp'n p.4:5-7; *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (explaining that a district court may conduct evidentiary proceedings under Rule 12(b)(1)). That *Butters* concerned foreign sovereign immunity does not render *Butters* immaterial because derivative sovereign immunity may still "derive" from foreign sovereign immunity. *See*

*Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (concluding that "private agents of foreign governments," like contractors "acting within the scope for their employment of the United States," are entitled to derivative sovereign immunity); Opp'n p.4:8-10.

Zocco rests his contention regarding *Childs* on a brief from an *Amicus Curiae* in *Childs* and the district court's opinion, neither of which are binding. *See* Opp'n p.4:11-23; *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092 (9th Cir. 2022). Nelnet did not assert *Childs* held that *Yearsley* is jurisdictional; Nelnet observed that *Childs* recognized that the defendant asserted *Yearsley* immunity under a Rule 12(b)(1) motion, *and the Ninth Circuit did not state that Rule 12(b)(1) was an improper vehicle* despite the district court *explicitly flagging* that it may be an improper proper vehicle. *See* Motion pp.16:17-17:7; *Childs*, 22 F.4th at 1095 n.1; *Childs*, 2020 WL 12689448, at *3. *Childs* could have easily settled this issue by rejecting Rule 12(b)(1) as a vehicle for *Yearlsey* immunity and placated the district court's concern, but it did not, suggesting Rule 12(b)(1) is a proper vehicle.

Zocco does not analyze *Myers v. United States*, which, as the Motion explains, precludes this Court from concluding that *Yearsley* is not jurisdictional. *See* 323 F.2d 580, 583 (9th Cir. 1963); Opp'n p.4:11-23; Motion p.17:8-14.

2. Nelnet is entitled to *Yearsley* Immunity.

Zocco conflates the issue of whether *Yearsley* immunity is jurisdictional with whether Nelnet satisfies the *Yearsley* standard. *See* Opp'n p.5:4-14 (arguing that *Yearsley* immunity is a fact-intensive inquiry and therefore "ill-suited for resolution on a motion to dismiss"). If the doctrine is jurisdictional, this Court is obligated to rule on this issue now under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). While unnecessary here because the Change Request leaves Nelnet with no discretion in choosing to use Google Analytics, this Court could even allow discovery and receive additional evidence to rule, yet Zocco has not requested discovery or proffered evidence to rebut Nelnet's evidence showing that DOE required it to use

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

the technology. *See* Ex.1; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 ¶ 5 (9th Cir. 1977).

Nelnet does not argue it is entitled to *Yearsley* immunity simply because it has a contract with the DOE. *See* Opp'n p.5:17. Nelnet established with evidence that its contract with DOE left "Nelnet with no discretion whether to implement Google Analytics." Motion p.18:20-21; *see* Ex. 1.

Zocco contradicts his Complaint in arguing that the Change Request "did not require [Nelnet] to disclose to Google the personally identifiable information of [Zocco] and Class Members[.]" Opp'n p.5:26-27. The Complaint alleges any use of Google Analytics necessarily entails disclosure of private information to Google. *See, e.g.*, Compl. ¶ 56 ("[Nelnet's] Website utilizes Google's pixel and SDK [*i.e.*, Google Analytics]. As a result, Google intercepted users' interactions on the Website, including their PII. Google received at least 'Custom Events' and URLs that disclosed the financial services received by the user. Google also received additional PII, including but not limited to the users' IP address, device information, and User-IDs."). Thus, per Zocco's own allegations, it is essentially a per se violation and Nelnet had no discretion in allegedly disclosing information under its DOE contract requiring Nelnet to use Google Analytics. *See* Ex. 1; *Esquivel v. United States*, 21 F.4th 565, 578 (9th Cir. 2021) (permitting a district court to assume the truth of a plaintiff's allegations in ruling on a Rule 12(b)(1) motion). As the Change Request required Nelnet to use Google Analytics, Nelnet is entitled to *Yearsly* immunity and no further inquiry is required.

### B. <u>Zocco Failed to State an ECPA Claim.</u>

#### 1. Zocco Failed to Plead Interception.

Zocco cites *In re Facebook, Inc. Internet Tracking Litigation Litig.*, 956 F.3d 589 (9th Cir. 2020), for the proposition that "simultaneous, unknown duplication and communication of [web requests does] not exempt a defendant from liability *under the party exception*," but Nelnet's argument based on *Crowley* concerns the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

interception element, not the party exception, and Zocco does not allege "duplication." Opp'n p.7:1-4 (alteration in original) (emphasis added).

Zocco's distinctions from *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d (N.D. Cal. 2001), are immaterial. *See* Opp'n pp.6:23-26, 7:5-15. *Crowley* does not state that "simultaneous" or "real-time" capture of a communication is necessary or sufficient for interception. *See* 166 F. Supp. 2d at 1269. Nor does *Crowley's* interception analysis depend on quantity of devices. *See id.* Besides, Zocco alleges *Google* intercepted his communications using those other devices whereas Nelnet only received them through its Website, Zocco's intended recipient. *See, e.g.*, Compl. ¶ 52 (alleging Google Analytics "intercepts those communications intended only for Defendant and transmits those communications to Google").

Zocco equivocates between "derivative liability," "procurement," and "aiding and abetting" to argue Google's interceptions can be imputed to Nelnet notwithstanding that "Section 2520 . . . does not provide for a civil action against one who aids and abets a violation of the [ECPA]." *Crowley*, 166 F. Supp. 2d at 1269 (citing *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 169 (5th Cir.2000)); *see* Opp'n pp.6 n.1, 7:17. At bottom, Zocco is referring to aiding and abetting and, thus, his "derivative," "procurement," etc. claims against Nelnet fail. *See* Compl. ¶ 102 (alleging Nelnet "procured another person to intercept" communications).

2. Zocco Failed to Plead Contents.

Zocco contradicts the Complaint in asserting that he has only alleged disclosure of the "substance, purport, or meaning of" communications. Opp'n pp.8:21-9:3. For example, Zocco alleges that Google Analytics JavaScript "code immediately intercepts a user's interaction with the [Website] every time the user visits it, including what pages they visit and what they click on" and "PII, such as IP addresses and device information" like "the user's operating system, operating system version, browser, language, and screen resolution." Compl. ¶ 50. None of this information is *necessarily* a substantive communication—certainly not a screen

resolution—but Zocco deflects that it could *possibly* reflect substance and incorrectly infers that it constitutes "contents." *See, e.g.*, *Sams v. Yahoo!, Inc.*, No. CV-10-5897-JF HRL, 2011 WL 1884633, at *7 (N.D. Cal. May 18, 2011) (observing that "IP addresses" do not qualify as "contents" under the ECPA); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

Thus, Zocco's ECPA claim must be dismissed to the extent it relies upon information like the foregoing that is not the "substance, purport, or meaning of" a communication. 18 U.S.C. § 2510(8); *see also* Motion p.20:16-20 (listing the types of information that the Complaint alleges as the substance of communications, but which does not necessarily qualify as substance).

3. Nelnet Qualifies for the Party Exception to ECPA liability.

a. Nelnet was Acting Under Color of Law.

Zocco confuses acting under the color of law under 18 U.S.C. § 2511(2)(c) with *Yearsley* immunity. *See* Opp'n p.9:9-11 (citing *Yearsley*, 309 U.S. at 21). Nelnet is acting on behalf of the government and, therefore, under color of law notwithstanding *Yearsley*. *See, e.g.*, Compl. ¶ 1 (recognizing Nelnet operates a ".gov" website); *see also* Ex. 1.

Zocco misstates the HEA's data-collection provisions. *See* Opp'n p.9:12-17. The HEA requires creation of databases containing information that Zocco alleges cannot be disclosed under CIPA or the ECPA, but which the HEA requires servicers to disclose to the DOE. *See* Motion pp.27:16-28:4. Servicers cannot collect and submit such information to the DOE without using *some* sort of software, so the statutes require use of software like Google Analytics.

b. The Crime-Tort Exception does not Apply to Nelnet.

Zocco's superficial analyses of this Court's cases are unavailing and his failure to analyze *Goulart v. Cape Cod Healthcare, Inc.* evinces that it is materially indistinguishable. *See* Opp'n pp.9:19-10:22; No. CV 25-10445-RGS, 2025 WL

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

1745732, at *1 (D. Mass. June 24, 2025).

*Shah v. Cap. One Fin. Corp.* provides no analysis, only an observation that the plaintiff alleged tort claims. 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025); *see* Opp'n pp.9:24-10:5. Zocco ignores Nelnet's citations to other cases expounding on the crime-tort standard. *See* Motion pp.21:13-23:15; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796-97 (N.D. Cal. 2022); *Doe v. Tenet Healthcare Corp.*, No. 1:23-CV-01106-DC-CKD, 2025 WL 1635956, at *23 (E.D. Cal. June 9, 2025). Those cases cite Ninth Circuit precedent requiring a plaintiff to allege that the defendant acted *for the primary purpose* of committing a crime or tort that is *separate and independent* from the alleged ECPA violation. *See In re Meta Pixel*, 647 F. Supp. 3d at 796-97 (citing *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)); *Doe*, 2025 WL 1635956, at *23 (same). *Shah* is not binding on this Court in any event. *See Aguilera v. Molina*, No. 18-CV-03389-HSG, 2023 WL 2065046, at *10 n.6 (N.D. Cal. Feb. 16, 2023) ("This Court is not bound by the opinion of another district judge."); Opp'n p.10:18-22.

In the paragraph following Zocco's cherry-picked quote, *In re Meta Pixel* states, "[t]hat said, in light of the authority in this district finding that *liability does not lie where a defendant's primary motivator was making money*, I am not convinced that plaintiffs have met their burden to show that the law and facts 'clearly' favor their position." 647 F. Supp. 3d at 797 (emphasis added) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)); *see* Opp'n p.10:6-10. In other words, the crime-tort exception cannot apply where the defendant is primarily motivated by profit. The Opposition cites *zero* allegations from the Complaint alleging Nelnet was motivated by anything other than profit whereas the Motion identified allegations explicitly stating Nelnet was motivated by profit. *See* Opp'n pp.9:19-10:22; Motion p.23:24-27; Compl. ¶ 72; *see also* Compl. ¶ 81.

Misunderstanding that it is the defendant's *primary* motivation that is relevant, Zocco cites cases like *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

(C.D. Cal. 2024), to assert that the crime-tort exception may still apply even where a defendant's alleged interception was motivated by profit. *See* Opp'n p.10:10-17. Indeed, the crime-tort exception *could* still apply if profit was merely ***a*** motivating factor because it is possible that some other motivation like committing a crime or tort was the *primary* factor. However, here, the only motivation alleged is profit, and Nelnet could not have been motivated to commit *other* crimes in violating the ECPA if it committed those crimes through the same act that constitutes the ECPA violation. *See* Compl. ¶¶ 72, 81; *Doe*, 2025 WL 1635956, at *23.

Zocco argues *Goulart* is not binding, but neither is *Shah* nor any other district court case, so Nelnet's arguments based on *Goulart* stand unopposed. *See* Opp'n p.10:20-22; *Aguilera*, 2023 WL 2065046, at *10 n.6. Zocco also observes that *Goulart* only addresses the ECPA and not CIPA. *See* Opp'n p.10:19-20. As Zocco repeatedly emphasizes, "the analysis for ECPA claims and CIPA claims is the same," so this Court *can and should* apply *Goulart* to Zocco's CIPA claims and arguments. Opp'n p.11:17; *see id.* p.8:4-6 (citing *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020)); *id.* p.14:3-4.

Zocco fails to respond to Nelnet's argument that the crimes he alleges—violations of the Graham-Leach-Bliley Act and California Financial Informational Privacy Act—did not occur separately and independently of Nelnet's alleged ECPA violation and therefore cannot satisfy the crime-tort exception. *See* Motion p.24:3-16; *Doe*, 2025 WL 1635956, at *23. Zocco now confirms that he is only alleging simultaneous interception and transmission to Google. *See* Opp'n pp.1:13-16, 7:5-7; Compl. ¶ 147. Zocco's allegations are thus distinct from the cases he cites wherein the crimes or torts constituted "further use[s]" of intercepted information. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *see* Opp'n p.10:14-17.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

### C. The HEA Preempts Zocco's Claims

#### 1. The Similarity of CIPA Claims to ECPA Claims does not Save Them from Preemption.

Zocco argues that, because CIPA and the ECPA entail the same analysis, the HEA cannot preempt CIPA claims. *See* Opp'n p.11:15-26. Zocco cites no authority for the proposition that a state statute that courts interpret consistently with a federal statute is immune to federal preemption, much less when another federal statute like 20 U.S.C. § 1098g expressly preempts that state statute. *See id.*

#### 2. Section 1098g Expressly Preempts Zocco's CIPA and California Claims.

Zocco argues that Section 1098g cannot preempt CIPA claims because CIPA "do[es] not mandate disclosures." Opp'n p.12:22. While CIPA may not *directly* mandate disclosures, it necessarily requires servicers to disclose use of software like Google Analytics to borrowers, which is the only way servicers can obtain borrowers' consent so as to avoid violating CIPA. *See* Motion pp.25:24-26:17. The same goes for a privacy claim under the California Constitution. *See id.* pp.26:19-27:2. Such requirements are expressly preempted by Section 1098's proscription that servicers "shall not be subject to *any* disclosure requirement of *any* State law." 20 U.S.C. § 1098g (emphasis added).

Zocco misrepresents cases for his propositions that Section 1098g's preemptive scope is limited and categorically does not encompass state laws of general applicability. *See* Opp'n p.12:6-13; *Hyland v. Navient Corp.*, 2019 WL 2918238, at *7 (S.D.N.Y. July 8, 2019) (quoting a "statement of interest filed by the United States" providing that "[n]othing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws" as a basis for declining to assign weight to a subsequent DOE interpretation that took a contrary position); *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1021 (D. Neb. 2019) (stating that the HEA "does not preempt the enforcement of a statute of general applicability under a state's traditional police power, . . . *which proscribes*

*unfair or deceptive acts or practices in commerce*" (emphasis added) (quoting *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529 (M.D. Pa. 2018)).

Zocco's basis for distinguishing *Chae v. SLM Corp.* 593 F.3d 936 (9th Cir. 2010) is immaterial. *See* Opp'n pp.12:28-13:3. Regardless of whether CIPA and the California Constitution's mandates govern information or conduct, they still have the effect of requiring servicers to affirmatively disclose to borrowers the software that servicers use in order to obtain borrowers' consent and avoid liability, and thus qualify as "any disclosure requirement of any State law." 20 U.S.C. § 1098g.

This Court is not obligated to adopt the DOE's 2021 interpretation ("2021 Interpretation") of Section 1098g because Section 1098g is a statute, not a regulation. *See* 86 Fed. Reg. 44277; Opp'n p.13:5-6, 13-14; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024). Field preemption is not at issue here, only the express language of Section 1098g preempting "any disclosure requirement of any State law," and CIPA and the California Constitution effectively impose such a requirement. 20 U.S.C. § 1098g; *see* Opp'n p.13:7-13; 86 Fed. Reg. at 44279 (stating that "Congress consciously opted to displace State authority in the[] limited particulars" described in Section 1098g and other express preemption sections).[2]

3. The HEA Obstacle Preempts Zocco's CIPA and California Constitution Claims.

Zocco fails to respond to Nelnet's obstacle preemption arguments because he confuses them with impossibility preemption. *See* Opp'n p.14:14-17 (quoting the 2021 Interpretation regarding impossibility preemption); *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1089-90 (C.D. Cal. 2019) (distinguishing between obstacle and impossibility preemption).

Nelnet has overcome the presumption against preemption based on

---

[2] The presumption against preemption does not apply to express preemption provisions like Section 1098g. *See Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*, No. CV 24-10482 PA (PDX), 2025 WL 2427844, at *4 (C.D. Cal. July 22, 2025); Opp'n p.11 n.2.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Congress's objectives expressed in the HEA provisions outlined in the Motion, which Zocco never addresses. *See* Motion pp.27:11-28:4; *Winebarger*, 411 F. Supp. 3d at 1089 ("A Court should discern congressional objectives by 'examining the federal statute as a whole and identifying its purpose and intended effects.'" (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).

Zocco repeats his bald assertion that, because courts have interpreted CIPA consistent with the ECPA, CIPA claims cannot be preempted. *See* Opp'n p.14:3-10. Zocco again provides no authority to support the proposition that an "inconsistent outcome" between CIPA and ECPA is an untenable result precluding preemption. *See id.*

Zocco provides no analysis of why Nelnet's obstacle preemption argument is tantamount to a request for field preemption (even if it was an impossibility preemption argument), which are distinct doctrines. *See id.* p.14:20-21; *Winebarger*, 411 F. Supp. 3d at 1088-89.

**D. <u>Zocco Failed to State a Claim for Violation of CIPA.</u>**

1. Zocco Failed to State a Claim under Section 631 of CIPA.

Preliminarily, CIPA and the ECPA entail the same analysis, so this Court should apply the authority in section B.3.b above to conclude that Nelnet is exempted from liability as a party to Zocco's communications. *See, e.g.*, Opp'n pp.11:17; *id.* p.8:5-6 (citing *Brodsky*, 445 F. Supp. 3d at 127); *id.* p.14:3-4; *Goulart*, 2025 WL 1745732, *3-4.

*In re Facebook* does not support Zocco's position. 956 F.3d 589; *see* Opp'n p.15:5-12. There, the Ninth Circuit noted that "the party exception must be considered in the technical context of this case[:]" Facebook using "plug-ins" to copy "the referrer header from [a] GET request and then send a separate but identical GET request and its associated referrer header to Facebook's server. It is through this *duplication and collection* of *GET requests* that Facebook compiles users' browsing histories." 956 F.3d at 607 (emphasis added). *In re Facebook* held

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

that "simultaneous, unknown duplication of communication *of GET requests* do not exempt a defendant from liability under the party exception." *Id.* at 608 (emphasis added).

Zocco does not allege that Nelnet "duplicated" any of his communications to Nelnet and then forwarded the communications to another party. *See generally* Compl. Zocco alleges that his "communications with [Nelnet] were *disclosed by* [Nelnet] to Google and/or *intercepted in transit* by Google[.]" Compl. ¶ 75 (emphasis added). But *In re Facebook* distinguished "duplication" from mere interception. *See* 956 F.3d at 608 n.9 ("In *Konop v. Hawaiian Airlines, Inc.*, we adopted a definition of 'intercept' that encompassed both 'an acquisition contemporaneous with transmission' and an act requiring a party to 'stop, seize, or interrupt in progress or course before arrival.' 302 F.3d 868, 878 (9th Cir. 2002). In that case, however, we considered whether items viewed on a private website were intercepted, in violation of the [ECPA], not plug-ins that duplicated and sent GET requests, as we consider here.").

Unlike *In re Facebook* where the plaintiff alleged that the owner of the plug-in device duplicated GET requests, Zocco alleges *Google*—not Nelnet—intercepts and collects data, but failed to name Google in this action. *See, e.g.*, Compl. ¶ 53 ("Once Google's software code collects the data intercepted from the Website, it packages the information and sends it to Google for processing. . . . Once the data is processed, it is stored on a Google database and cannot be changed."); *id.* ¶¶ 50-81.

Additionally, Zocco failed to allege either Nelnet or Google intercepted much less duplicated "GET requests" despite recognizing that "GET Requests" are a distinct type of HTTP request and making allegations regarding HTTP requests in general elsewhere. *See id.* ¶ 38; *see also, e.g.*, *id.* ¶ 74; *In re Facebook*, 956 F.3d at 605 (discussing a "Get request" and a "full-string detailed URL" as different); *id.* at 596 (explaining URLs without describing a "Get request" as synonymous therewith). Thus, *In re Facebook* is inapposite and Nelnet is entitled to the party

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

exception for Zocco's Section 631(a) claim.[3]

The Complaint indicates that Google Analytics is a tool—and Zocco now maintains that Google Analytics can be used in a manner that does not violate CIPA or the ECPA[4]—so Zocco's allegations merely accusing Nelnet of using Google Analytics do not state a CIPA claim. *See* Opp'n pp.15:13-14, 5:24-6:2; Compl. ¶¶ 45, 46. The Complaint expounds on Google Analytics's *capabilities*, and asserts that Nelnet *used* Google Analytics, but fails to define when and how Nelnet used Google Analytics illicitly as opposed to as a tool, including distinguishing Nelnet's alleged illicit conduct from that of Google. Thus, Zocco alleges a possible CIPA claim, not a plausible CIPA claim. *See Ashcroft*, 556 U.S. at 678.

2. Zocco Failed to State a Claim under Section 632 of CIPA.

Unable to dispute that Nelnet cannot eavesdrop under Section 632 because it was a party to its communications with Zocco, Zocco deflects to arguing that Nelnet is liable under Section 632(a) for aiding and abetting Google. *See* Opp'n pp.15:27-16:13, 16:23-17:2. Yet, Zocco concedes that derivative liability is "not explicit [in] section 632." *Id.* p.16:2. While Zocco points to cases applying Cal. Penal Code § 31 to Section 632, those cases do not reconcile that Section 631(a) explicitly provides for derivative liability while the very next Section, 632, does not, which evidences legislative intent that the latter not provide for derivative liability. *See* Cal. Penal Code §§ 631(a), 632; *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (commenting that "the doctrine of *expressio unius est exclusion alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions'" (quoting *Boudette v.*

---

[3] Even if this Court equates GET requests with HTTP requests, HTTP requests are *one type* of information Zocco alleges Nelnet disclosed, so the party exception should apply to Nelnet with regard to all other forms of information.

[4] In its *Yearlsey* section above, Nelnet observes that Zocco's allegations reflect that simply using Google Analytics equates to violating the ECPA and/or CIPA. Any seeming inconsistency on Nelnet's part is due to inconsistencies in the Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

*Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)). Nor is this Court bound by those decisions. *See Aguilera*, 2023 WL 2065046, at *10 n.6.

Nelnet's argument that the "recording" component of a Section 632 analysis is concerned with recordings of sounds has support; Zocco just ignores it. *See* Opp'n p.16:14-15; Motion pp.29:28-30:11; *People v. Drennan*, 84 Cal. App. 4th 1349, 1356 (2000). Particularly because software can record sounds, Zocco's assertion that software can be a recording device has no impact on Nelnet's argument that "records"—not "devices"—in Section 632 denotes that Section 632(a) only applies to recordings of sounds. *See* Opp'n p.16:16-18; Motion p.30:17-25. None of the cases Zocco cites without explanation offer a contrary interpretation of "sounds" in Section 632. *See* Opp'n p.16:18-21; *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (not discussing the meaning of "records" in Section 632); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856-57 (W.D. Wash. 2024) (same).

### E. Zocco Failed to State a Claim for Invasion of Privacy.

Zocco provides no analysis as to how the alleged disclosures of Zocco's information described in the Complaint are more egregious than the breaches of social norms held insufficiently egregious in the cases identified in the Motion. *See* Opp'n pp.17:4-19:4; Motion pp.31:24-33:7. Zocco does not analyze any case in response either, offering only bald assertions that "holistic consideration" warrants the conclusion that Nelnet engaged in egregious breaches and that Nelnet's "case law is unpersuasive." *See* Opp'n p.18:6, 12. Zocco further fails to explain why the egregiousness inquiry cannot be resolved at this stage, particularly when he cannot explain why the breaches in his allegations are more egregious than those that could not sustain privacy claims in other cases. *See id.* p.18:24-25.

## III. CONCLUSION

Accordingly, this Court should dismiss Zocco's Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
2029 Century Park East, Suite 950
Los Angeles, CA 90067-2918

Dated: October 17, 2025

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Jonathan C. Sandler
Jonathan C. Sandler
Alex Wolfe
Attorneys for Defendant
NELNET SERVICING, LLC
ERRONEOUSLY NAMED AS
NELNET, INC.

35367121.7