1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    PETER ZOCCO,                              Case No. 25-cv-04470-NW
8                    Plaintiff,
9            v.                               **ORDER GRANTING IN PART AND
                                              DENYING IN PART MOTION TO
10   NELNET, INC.,                            DISMISS AND GRANTING MOTION
                                              TO SEAL**
11                   Defendant.
                                              Re: ECF Nos. 19, 20
12

13          On September 12, 2025, Defendant filed a motion to dismiss Plaintiff Peter Zocco's

14   putative class action complaint.  ECF No. 19.[1]  Having considered the parties' briefs and the

15   relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R.

16   7-1(b), and GRANTS IN PART and DENIES IN PART the motion for reasons below.

17          Concurrently with its motion to dismiss, Defendant filed an administrative motion to seal a

18   single document, a business operations change request.  ECF No. 20.  Having considered the

19   motion and other supporting materials, the Court GRANTS the motion to seal and ORDERS the

20   document filed at ECF No. 20-3 SEALED.

21   **I.    BACKGROUND[2]**

22          On May 27, 2025, Plaintiff Peter Zocco sued Defendant Nelnet, Inc.[3] on behalf of himself

23   and others similarly situated ("Plaintiffs").  Nelnet operates a website, nelnet.studentaid.gov,

24

25   _____
     [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
26   ECF-generated page numbers at the top of documents.

27   [2] The factual background is drawn from Plaintiff's Complaint.  *See* ECF No. 1 ("Compl.").

28   [3] Nelnet notes in its motion to dismiss that Nelnet Servicing, LLC was erroneously served as
     Nelnet, Inc.  *See* ECF No. 19-1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    where account holders like Zocco can manage their student loans and choose payment plans.

2    Plaintiffs in this putative class action are Nelnet account holders who accessed and used the

3    website.

4    　　　To create and access their private financial accounts on the website, users share personally

5    identifying information ("PII"), including their name, phone number, and email address.  Plaintiffs

6    allege that Nelnet integrated Google Analytics into its website and in so doing, "enable[d] Google

7    Analytics to eavesdrop on" confidential communications that include Plaintiffs' PII.  Compl. ¶ 33.

8    　　　Websites and apps incorporate Google Analytics "by adding a small piece of JavaScript

9    measurement code to each page on the site," including pages used after an account holder logs in

10    to the website.  The code "intercepts a user's interaction with the webpage every time the user

11    visits it, including what pages they visit and what they click on."  Compl. ¶ 50.  "The code also

12    collects PII, such as IP addresses and device information related to the" device used to access the

13    website.  *Id.*  Once the code collects data from the website, it sends the information to Google for

14    processing.  "After the data has been processed and stored in the database, Google uses this data to

15    generate reports to help analyze the data from the webpages."  *Id.* ¶ 54.  The generated reports

16    include information on acquisition (how users arrive at a site), user engagement on the site, and

17    user demographics.  Google then uses these reports to "provide marketing and analytics services"

18    and "improve its ad targeting capabilities and data points on users."  *Id.* ¶ 55.

19    　　　The complaint alleges that Nelnet's website uses Google Analytics and other tools that

20    send a user's information, including PII, to Google.  Specifically, Nelnet discloses information

21    related to a user's account holder status, the last four digits of a user's cell phone, and a user's

22    partial email address to Google during the two-step authorization process.  This allows Google to

23    know individual's identities and "information related to the financial services" the individual

24    receives.  *Id.* ¶ 72.

25    　　　Plaintiffs' complaint asserts four causes of action: (1) violation of the Electronic

26    Communications Privacy Act ("ECPA") (Count I), (2) violation of the California Invasion of

27    Privacy Act ("CIPA") under California Penal Code Section 631(a) (Count II), (3) violation of

28    CIPA under California Penal Code Section 632 (Count III), and (4) invasion of privacy under

United States District Court
Northern District of California

1   California's constitution (Count IV).  On September 12, 2025, Nelnet moved to dismiss the entire

2   complaint on several different grounds.  ECF No. 19.  Plaintiffs opposed and Nelnet filed a reply.

3   ECF Nos. 26, 28.

4   **II.      LEGAL STANDARD**

5           **A.      Rule 12(b)(1)**

6           Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's

7   jurisdiction over the subject matter of the complaint.  As the party invoking federal jurisdiction,

8   the plaintiff bears the burden of establishing that the court has the requisite subject matter

9   jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

10  375, 377 (1994).  A complaint will be dismissed if, looking at the complaint in its totality, it

11  appears to lack federal jurisdiction either "facially" or "factually."  *Thornhill Publ'g Co., Inc. v.*

12  *Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373

13  F.3d 1035, 1039 (9th Cir. 2004).  When a complaint is challenged for lack of subject matter

14  jurisdiction on its face, all material allegations in the complaint will be taken as true and construed

15  in the light most favorable to the plaintiff.  *Pride v. Correa,* 719 F.3d 1130, 1133 (9th Cir. 2013).

16  Thus, a district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6).

17  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride*, 719 F.3d at 1133).

18          In resolving a factual attack on jurisdiction, the Court may review evidence beyond the

19  complaint without converting the motion to dismiss into a motion for summary judgment.  *Id.*

20  (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039

21  n.2 (9th Cir. 2003)).  While the Court may consider evidence outside the pleadings to resolve a

22  "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is

23  inappropriate when the jurisdictional issue and substantive issues are so intertwined that the

24  question of jurisdiction is dependent on the resolution of factual issues going to the merits of an

25  action."  *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst*

26  *Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted).

27          **B.      Rule 12(b)(6)**

28          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

1    if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

2    dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

3    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

4    requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

5    has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require

6    "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

7    relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

8        In deciding whether a plaintiff has stated a claim upon which relief can be granted, the

9    court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

10   in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

11   However, the court is not required to accept as true "allegations that are merely conclusory,

12   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

13   F.3d 1049, 1055 (9th Cir. 2008).

## III.   DISCUSSION

15       Defendant Nelnet advances several arguments as to why all four causes of action in the

16   complaint should be dismissed.  *See* ECF No. 19.  The Court addresses each in turn.

### A.    Derivative Sovereign Immunity (All Counts)

18       Nelnet argues that this Court lacks subject matter jurisdiction over all Plaintiffs' claims

19   because Nelnet is entitled to derivative sovereign immunity as a government contractor.  ECF No.

20   19 at 14-18.  In response, Plaintiffs first assert that derivative sovereign immunity is an affirmative

21   defense, not a jurisdictional bar, and second, that Nelnet is not entitled to derivative sovereign

22   immunity because the company retained discretion over how to implement use of Google

23   Analytics tools.  ECF No. 26 at 9-13.  To begin, the Court finds that derivative sovereign

24   immunity is not a jurisdictional bar but rather, an affirmative defense to Plaintiffs' claims.  Even if

25   it were a jurisdictional issue, Nelnet has not established on this record that it is entitled to

26   derivative sovereign immunity.

27       "Derivative sovereign immunity protects a private entity that has contracted with the

28   federal government, provided that the government acted within its constitutional authority and that

United States District Court
Northern District of California

4

the government has specifically authorized the contractor's actions at issue." *Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 (9th Cir. 2025) (citations omitted).  First articulated in *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940), derivative sovereign immunity is not absolute. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016), *as revised* (Feb. 9, 2016).  The immunity extends only to government contractors whose conduct complies with the specifications of a federal government contract.  *Nwauzor*, 127 F.4th at 770.  "A contractor whose challenged conduct is not dictated by its contract with the government, but is rather within the contractor's discretion, is not entitled to derivative sovereign immunity." *Id.* (citation omitted).

The issue of whether derivative sovereign immunity is jurisdictional is unsettled in the Ninth Circuit.[4]  Additionally, a circuit split exists on the issue.  *See Spurlin v. Air & Liquid Sys. Corp.,* 568 F. Supp. 3d 1050, 1052 (S.D. Cal. 2021) (outlining circuit split).  Upon review of the parties' arguments and recent case law, the Court finds derivative sovereign immunity is not jurisdictional.

Only the Fourth Circuit has found the issue of derivative sovereign immunity to be a jurisdictional one.  *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).  Conversely, the Fifth and Sixth Circuits have concluded derivative sovereign immunity is not jurisdictional. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) and *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).  In reaching their decisions, both Circuits noted that the *Yearsley* decision does not address sovereign immunity.  *Id.*  Further, both courts found derivative sovereign immunity to be "closer in nature to qualified immunity for private individuals under government contract, which is an issue to be reviewed on the merits rather than for jurisdiction." *Adkisson*, 790 F.3d at 647.  The Court agrees with these opinions and finds that Nelnet's claim of derivative sovereign immunity does not implicate the Court's subject matter jurisdiction, but rather, is an affirmative defense.  Accordingly, the Court DENIES Nelnet's Rule 12(b)(1) motion on that basis.

---

[4] As both parties note, the Ninth Circuit's decision in *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092 (9th Cir. 2022) did not definitely resolve the issue.  There, the court held that "a district court order denying a claim of derivative sovereign immunity is not immediately appealable under the collateral order doctrine." *Id.* at 1094.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Even assuming Nelnet brought its motion as one for summary adjudication of its derivative

2    sovereign immunity defense, Nelnet is not entitled to derivative sovereign immunity on this

3    record.

4    Derivative sovereign immunity is confined to cases where a government "contractor had

5    no discretion in the design process and completely followed government specifications." *Cabalce*

6    *v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (cleaned up); *see also*

7    *Campbell-Ewald Co.*, 577 U.S. at 167 (2016).

8    Here, the record does not demonstrate that Nelnet had no discretion in its implementation

9    of Google Analytics and other tools. *See Cabalce*, 797 F.3d at 732 (finding a private government

10   contractor was not entitled to derivative sovereign immunity where the record did not show the

11   contractor "had no discretion" in creating a plan to destroy fireworks). Instead, stakeholders

12   

13   ." ECF No. 20-3 at 2. Requirements of this

14   implementation included that:

24   *Id.* These requirements are high-level and do not demonstrate Nelnet's complete lack of discretion

25   in how to implement Google Analytics throughout its webpage. Accordingly, on this record and

26   without further evidence, Nelnet is not entitled to summary adjudication of its derivative sovereign

27   immunity defense.

28

6

**B.**     **Zocco's ECPA Claim (Count I) and CIPA Claims (Counts II and III)**

Next Nelnet argues that Plaintiffs failed to plead a claim for violation of the ECPA.  ECF No. 19 at 19-24.  Among other things, Nelnet contends that it was "a party to [Plaintiffs'] communications" and thus exempt from liability.  *Id.* at 21.  For the reasons stated below, the Court agrees and GRANTS Nelnet's motion to dismiss in this regard.[5]

> The Wiretap Act prohibits the unauthorized "interception" of an "electronic communication."  18 U.S.C. § 2511(1)(a)–(e).  Similarly, CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication" "without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a).  Both statutes contain an exemption from liability for a person who is a "party" to the communication, whether acting under the color of law or not.  18 U.S.C. § 2511(2)(c), (d); *see Warden v. Kahn*, 99 Cal.App.3d 805, 160 Cal. Rptr. 471, 475 (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").  Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption. *See, e.g.*, *In re Google Cookie*, 806 F.3d at 152 (holding that CIPA claims could be dismissed because the parties were exempted from liability under the Wiretap Act's party exception).

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020)

Here, Nelnet may be protected by the party exception because Plaintiffs fail to allege that communication of their PII to *Defendant* — as opposed to Google — was "unknown."  Plaintiffs acknowledge that they are Nelnet account holders, who signed into their "account portals . . . [to] utilize various financial services (*i.e.*, pay loans) through Nelnet."  Compl. ¶ 69.  The complaint is replete with descriptions of "Plaintiff[s'] communications with Defendant" and "Plaintiff and Class members' interactions with Defendant's Website."  *Id.* ¶¶ 75, 101.  Thus, Plaintiffs' use of Nelnet's website is similar to the plaintiffs' knowing use of defendant's browser extension in *Karwowski v. Gen Digital, Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) (finding plaintiffs failed to allege that defendant was not a party to the communication).

Plaintiffs try to plead around the party exception by alleging that Nelnet "was not acting under color or law" and acted "for the purpose of committing a criminal or tortious act."  Compl.

---

[5] As discussed, the Court's analysis vis-à-vis Plaintiffs' ECPA claim applies to Plaintiffs' CIPA claims.

1    ¶¶ 110, 107.  Both are carve-outs to the exception from liability for a person who was a party to

2    the communication.  18 U.S.C. § 2511(c), (d).

3        First, Nelnet argues it was acting under color of law because "[u]nder its contract with the

4    DOE [Department of Education] and pursuant to the HEA, Nelnet is and was required to collect

5    the data that borrowers submit to the Website, submit the data to the DOE, and implement and use

6    Google Analytics."  ECF No. 19 at 21.  What, if anything, Nelnet was required to do under its

7    contract and pursuant to the law is a factual issue inappropriate for resolution on a motion to

8    dismiss.

9        Second, Nelnet argues that it was not acting "for the purpose of committing any crime or

10   tort in violation of state or federal law."  *Id.* (cleaned up).  In particular, Nelnet argues that

11   Plaintiffs fail to meet their burden of alleging that "either the 'primary motivation or a determining

12   factor in [Nelnet's] actions has been to injure [Zocco] tortiously.'"  *Id.* (quoting *In re Meta Pixel*

13   *Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)).  The Court finds this argument

14   compelling.

15       The "party exception" to the ECPA does not apply when an "interceptor acts 'for the

16   purpose of' committing any crime or tort in violation of state or federal law."  *Doe v. Meta*

17   *Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023) (quoting 18 U.S.C. § 2511(2)(d)).

18   "Under this exception, Plaintiffs must allege that either the primary motivation or a determining

19   factor in the interceptor's actions has been to injure plaintiffs tortiously."  *Brown v. Google LLC*,

20   525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (cleaned up).  Plaintiffs must do more than simply

21   assert "that Defendant's conduct was illegal or tortious."  *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d

22   1047, 1057 (N.D. Cal. 2025).  Instead, Plaintiffs need to focus on "whether the purpose for the

23   interception—its intended use—was criminal or tortious" not whether the interception violated

24   another law.  *Id.* (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir.

25   1999) (internal quotation omitted)).

26       While the complaint alleges "Defendant intentionally intercepted the contents of

27   Plaintiff[s'] and Class members' electronic communications for the purpose of committing a

28   criminal or tortious act in violation of the Constitution or laws of the United States or of any

United States District Court
Northern District of California

state," it fails to allege specific facts in support of this allegation.  Compl. ¶ 107.  Plaintiffs allege that "Defendant violated a provision of the Gramm-Leach-Bliley Act," *id.* ¶ 108, and the California Financial Information Privacy Act, *id.* ¶ 30, but fail to state how Nelnet allegedly violated these laws and that the violation was the purpose for the interception.  Instead, Plaintiffs seem to acknowledge that "Defendant specifically used the tracking technology provided by Google to track and utilize Plaintiff's and Class members' PII for financial gain" rather for the purpose of committing a crime or tort.  *Id.* ¶ 109.  More is needed.  Plaintiffs need to adequately allege that Nelnet's conduct violated the law to make use of the crime-tort exception.  *See e.g. R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (finding "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.").

The Court finds the complaint does not allege sufficient facts to support the premise that the purpose of the interception was to perpetuate a crime or tort.  Thus, Plaintiffs failed to meet their burden that the crime-tort exception applies.  Nelnet's motion to dismiss is GRANTED with leave to amend as to this issue with respect to Plaintiffs' ECPA (Count I) and CIPA (Counts II and III) claims.[6]  Because dismissal is granted, the Court does not reach Nelnet's remaining arguments regarding these claims.

### C.    Zocco's Claim for Invasion of Privacy (Count IV)

Nelnet argues that Section 1098g of the Education Act both expressly and impliedly preempts Plaintiffs' state law claims.  ECF No. 19 at 24-28.  The Court disagrees and denies Nelnet's motion to dismiss in this regard.  Because the Court already dismissed Plaintiffs' CIPA claims with leave to amend, the analysis below focuses on Plaintiffs' invasion of privacy claim

---

[6] Because the party exception analysis is the same for both the ECPA and CIPA claims, these claims are dismissed with leave to amend.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (stating that "[c]ourts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 152 (3d Cir. 2015) (holding that CIPA claims could be dismissed because the defendants were exempt from liability under the ECPA's party exception).

1    under the California Constitution.

2         The Constitution's Supremacy Clause dictates that federal law "shall be the supreme Law

3    of the Land[,]" U.S. Const. art. VI, cl. 2, and invalidates any state law that "interferes with or is

4    contrary to federal law." *Free v. Bland*, 369 U.S. 663, 666 (1962). "Federal preemption occurs

5    when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually

6    conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is

7    reasonable to conclude that Congress left no room for state regulation in the legislative field."

8    *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 849 (9th Cir. 2019)

9    (citation omitted). Field preemption does not apply to the Higher Education Act ("HEA"). *See*

10   *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 225-26 (9th Cir. 1994).

### 1.    Express Preemption

12        Congress may indicate its intent to preempt state law "through a statute's express

13   language." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Analysis of an express preemption

14   provision begins with "identify[ing] the domain expressly pre-empted" by the language.

15   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996). To determine the proper scope of the

16   provision, courts consider the provision's text, the surrounding statutory framework, and

17   Congress's stated purposes in enacting the statute. *Id.* at 485-86. Congressional intent is the

18   "ultimate touchstone" of preemption analysis. *Id.* at 485. Congressional intent is "revealed not

19   only in the text, but through the reviewing court's reasoned understanding of the way in which

20   Congress intended the statute and its surrounding regulatory scheme to affect business, consumers,

21   and the law." *Id.* at 486. Additionally, analysis starts "with the basic assumption that Congress

22   did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 728 (1981).

23   "[B]ecause the States are independent sovereigns in our federal system, we have long presumed

24   that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc.*, 518 U.S.

25   at 485.

26        "The California Constitution expressly recognizes a right to privacy which is broader than

27   the federal right to privacy." *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 327 (1997)

28   (cleaned up). "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional

United States District Court
Northern District of California

right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Mathews v. Becerra*, 8 Cal. 5th 756, 769 (2019) (citation omitted). "A defendant may prevail in a state constitutional privacy case by negating any of the three elements." *Id.*

Section 1098g of the HEA provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act . . . shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g. Nelnet argues that Plaintiffs' invasion of privacy claim "invariably requires disclosure" of its use of Google Analytics and this is expressly preempted by Section 1098g. ECF No. 19 at 26-27. In making this assertion, Nelnet employs the following logic. First, Nelnet notes that an invasion of privacy claim requires "a reasonable expectation of privacy under the circumstances." *Id.* at 26. Next, Nelnet asserts that this "reasonable expectation of privacy" cannot be met if Plaintiffs "provided 'voluntary consent to the invasive actions of defendant.'" *Id.* (citation omitted). Finally, Nelnet contends that obtaining consent, to avoid liability under the California Constitution, requires disclosure. *Id.* Nelnet's conclusion, that an invasion of privacy claim inevitability requires disclosure, is a logical overreach.

Nelnet's logic collapses because the right to privacy embodied in the California Constitution does not "subject [Nelnet] to any disclosure requirements" in violation of Section 1098g of the HEA. 20 U.S.C. § 1098g. Instead, Nelnet asserts, incorrectly, that it must disclose its use of Google Analytics to users of its website in order to defend against a potential invasion of privacy claim. ECF No. 19 at 26-27. While disclosure to users might be one avenue to comply with the California Constitution, it is not the only route to defend against an invasion of privacy claim. Nelnet's reasoning that for it and other loan servers "to avoid violating the California Constitution then, they must obtain consent to use software like Google Analytics which, again, invariably requires disclosure of such use" is too attenuated to invoke express preemption. *Id.* What Nelnet and other loan servicers would do or could do to avoid liability under the law is a factual issue inappropriate for resolution on a motion to dismiss.

1    Therefore, Plaintiffs' invasion of privacy claim is not expressly preempted under the HEA

2    and Nelnet's motion to dismiss is denied in this regard.

3              **2.    Conflict Preemption**

4         "Even where Congress has not completely displaced state regulation in a specific area,

5    state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough Cnty.,*

6    *Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985).  "Such a conflict arises when state

7    law stands as an obstacle to the accomplishment and execution of the full purposes and objectives

8    of Congress." *Id.* (cleaned up).  This is sometimes referred to as obstacle preemption.

9         Here, Nelnet's obstacle preemption arguments do not survive scrutiny.  To start, Nelnet

10   notes how Congress's purpose in enacting the HEA was to "delegate authority to the federal

11   government to select and contract" with loan servicers.  ECF No. 19 at 27 (citation omitted).

12   Nelnet then reviews how several provisions of the HEA instruct the DOE to "contract at

13   competitive prices" with loan servicers who "demonstrate[] effectiveness." *Id.* (citation omitted).

14   Nelnet also notes how the HEA requires servicers to report "information on all aspects of loans" to

15   the DOE. *Id.* (emphasis and citation omitted).  Finally, Nelnet describes how the HEA requires

16   the creation of a "National Student Loan Data System" using information from borrowers like

17   "names, social security numbers, information about a borrower's finances, defaults, and so on."

18   *Id.* at 27-28 (citing 20 U.S.C. § 1092(a)).  From this, Nelnet concludes, without support or

19   explanation, that "the California Constitution stand[s] as [an] obstacle[] to DOE's authority under

20   the HEA to collect borrower data and directly contract with servicers." ECF No. 19 at 28.  Nelnet

21   fails to explain how it reached this conclusion under the current record.  On the pleadings, it is

22   unclear why "the California Constitution either outright prohibit[s] or severely impede[s]" Nelnet

23   from contracting with the DOE or from collecting information about borrowers. *Id.*  Without

24   more, the Court cannot assess whether obstacle preemption applied,  Further, this argument goes

25   to the merits of Nelnet's case and is inappropriate for resolution on a motion to dismiss.

26        As such, the Court finds, on the current pleadings, Plaintiffs' invasion of privacy claim is

27   not conflict or obstacle preempted under the HEA, and Nelnet's motion to dismiss is denied in this

28   regard.

### 3.    Failure to State a Claim

Finally, Nelnet argues that Plaintiffs fail to state a claim for invasion of privacy because Nelnet's disclosures of Plaintiffs' information was not an "egregious breach of social norms underlying the privacy right." ECF No. 19 at 31. The Court disagrees and finds Plaintiffs' complaint sufficient in this regard.

To state a claim for invasion of privacy under the California Constitution, Plaintiffs must show "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (citing *Hernandez*, 47 Cal. 4th at 287). Whether actions could offend a reasonable person is not necessarily an issue that can be resolved at the pleading stage. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (finding "Plaintiffs' allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive a dismissal motion on the issue").

Here, Plaintiffs allege that Nelnet shared "private and confidential facts and information regarding Plaintiff[s'] . . . financial services," and PII that Plaintiffs never intended to be shared "beyond private communications on the Website and the consideration of finance professionals." Compl. ¶ 142. According to the complaint, the "information shared by [Nelnet] allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." *Id.* ¶ 72. "For example, when a consumer logs into their Nelnet account and makes a payment or opts for repayment options, [Nelnet] discloses such information to Google through its use of Google Analytics." *Id.* ¶ 73. Against this backdrop, Plaintiffs have identified sufficient facts to survive a motion to dismiss.

Nelnet's motion to dismiss Plaintiffs' invasion of privacy claim is denied.

United States District Court
Northern District of California

1    **IV.    CONCLUSION**

2        Nelnet's motion to dismiss is GRANTED in part and DENIED in part.  Nelnet's motion to

3    dismiss is GRANTED with leave to amend as to Plaintiffs' ECPA (Count I) and CIPA (Counts II

4    and III) claims.  Nelnet's motion to dismiss is DENIED in all other respects.

5        Any amended complaint consistent with this order shall be filed within 21 days.

6        **IT IS SO ORDERED.**

7    Dated: January 29, 2026

8                                                              _____

9                                                              Noël Wise
                                                              United States District Judge

United States District Court
Northern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28