**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
Email: sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

PETER ZOCCO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NELNET SERVICING, LLC,

Defendant.

Case No. 5:25-cv-04470-NW

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: June 17, 2026
Time: 9:00 a.m.
Ctrm: 3, 5th Floor
Judge: Hon. Noël Wise

# TABLE OF CONTENTS

PAGES

INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS .......... 3

A. Plaintiff Suffered A Concrete And Particularized Injury .......... 3

B. Plaintiff Has Standing To Seek Injunctive Relief .......... 7

II. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631 .......... 7

A. Plaintiff Alleges Aiding And Abetting Liability Under CIPA 631 .......... 8

B. The Party Exception Does Not Shield Defendant From Liability Because CIPA Is An All-Party Consent Statute, And Plaintiff Did Not Consent to Google's Interception .......... 10

C. This Court Should Not Reach The Crime-Tort Exception Because CIPA Is An All Party Consent Statute And Plaintiff Did Not Provide Consent .......... 12

III. PLAINTIFF SUFFICIENTLY ALLEGES DEFENDANT VIOLATED CIPA SECTION 632 .......... 12

A. Plaintiff Alleges A "Communication" .......... 13

B. Plaintiff Alleges His Communications Were "Confidential" .......... 14

C. Plaintiff Alleges "Eavesdropping or Recording" .......... 14

IV. CIPA SECTION 632 SUPPORTS AIDING-AND-ABETTING LIABILITY .......... 15

V. SHOULD THE COURT GRANT DEFENDANT'S MOTION IN WHOLE OR IN PART, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND .......... 16

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*Ambriz v. Google*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 6

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ... 9

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ... 9

*Branch v. Umphenour*,
851 F. App'x 732 (9th Cir. 2021) ... 20

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 11, 14, 18

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ... 10

*Coal. on Homelessness v. City & Cnty. of San Francisco*,
758 F. Supp. 3d 1102 (N.D. Cal. 2024) ... 20

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 13

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ... 11

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ... 20

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ... 9

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ... 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ... 20

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002) ... 18

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 8, 9

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 8, 10

*Gabrielli v. Motorola*,
2025 WL 1939957 (N.D. Cal. Jul. 14, 2025) .......... 11

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .......... 8

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020) .......... 11

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 18

*Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) .......... 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 8

*Humphrey v. J.M. Smucker Co.*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 6, 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 16

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 9

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 9

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 14, 16

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 5, 16

*Kearney v. Salomon Smith Barney, Inc.*,
137 P.3d 914 (Cal. 2006) .......... 17

*Krztzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 8

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 18

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......... 18

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Maren Anderson et al. v. Nat'l Collegiate Athletic Ass'n, et al.*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) .......... 10

*Moser v. Health Ins. Innovations, Inc.*,
2019 WL 2271804 (S.D. Cal. May 28, 2019) .......... 10

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) .......... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 7

*Ribas v. Clark*,
38 Cal.3d 355 (Cal. 1985) .......... 5, 14, 15

*Riley v. California*,
573 U.S. 373 (2014) .......... 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 13

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 5, 17, 18

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 18

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 18, 19

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 7

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ........ 11

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 12

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 7, 8

*Vaccaro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 19

*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 19

*Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 10

*Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 8

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 9, 12

**STATUTES**

18 U.S.C. § 2511 ........ 15

Cal. Fin. Code § 4051 ........ 5

Cal. Fin. Code § 4052(a)–(b) ........ 8

Cal. Fin. Code § 4052.5 ........ 8

Cal. Penal Code § 31 ........ 16, 19

Cal. Penal Code § 630 ........ 14

Cal. Penal Code § 631 ........ 12, 15, 20

Cal. Penal Code § 631(a) ........ 12, 13, 14, 16

Cal. Penal Code § 632 ........ 16, 17, 18, 19

Cal. Penal Code § 632(a) ........ 14, 16, 19

**RULES**

Fed. R. Civ. P. 15(a)(2) ........ 20

**REGULATIONS**

16 C.F.R. § 313 .......... 5

16 C.F.R. § 313.3(k)(1) .......... 8

16 C.F.R. § 313.3(n) .......... 8

**INTRODUCTION**

The California Legislature recognizes the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051; *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information); *Garcia v. Truist Finan. Corp.*, Case No. 2:25-cv-5753-MEMF-PVC, ECF No. 33 (C.D. Cal. Mar. 25, 2026) (same). Despite such duties to prevent consumers' private information from disclosure, Defendant Nelnet Servicing, LLC ("Defendant") unlawfully intercepts and discloses its student loan borrowers' personal and financial information to Google LLC ("Google") without borrowers' knowledge or consent.

Defendant's main argument against Plaintiff's CIPA claims is that he "does not allege any new crimes or torts, how Nelnet violated the GLBA or CFIPA, or that Nelnet intercepted Zocco's PII for the purposes of committing any crime or tort." Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 42) ("MTD"). This argument is misplaced. Unlike the Federal Wiretap Act, CIPA requires the consent of all parties to a communication. *Ribas v. Clark*, 38 Cal.3d 355, 361, 212 Cal.Rptr. 143, 696 P.2d 637 (Cal. 1985). While CIPA shares certain elements with the Wiretap Act, it is still a two-party consent statute. Courts routinely find that the crime-tort exception does not apply to CIPA. *See Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (granting motion to dismiss ECPA claim and denying motion to dismiss CIPA claim). Therefore, Defendant's arguments concerning the crime-tort exception should be rejected.

Defendant's argument concerning the law of the case doctrine fares no better, as Plaintiff is now bringing his wiretapping claims under an aiding theory. *Compare* Complaint (ECF No. 1) ¶ 4 ("Defendant discloses information related to consumers' student loan debts to Google LLC.") *with* First Amended Complaint (ECF No. 38) ("FAC") ¶ 4 ("Defendant aids, employs, agrees with, or

otherwise enables Google LLC ('Google') to eavesdrop on communications sent and received by Plaintiff and Clas[s] Members."). The law of the case doctrine is inapplicable.

Plaintiff is a resident of California who accessed Defendant's Website to make loan payments. FAC ¶¶ 6–7. Unbeknownst to Plaintiff, Defendant aids, employs, agrees with, or otherwise enables Google, LLC—an undisclosed, non-party to the communications—with intercepting Plaintiff's and class members sensitive and confidential information. FAC ¶ 4. The Google tracking code, which Defendant embedded into its Website, including within Plaintiff's individual portal (FAC ¶ 71), transmits borrower's personally identifiable information (e.g. partial phone number, email, cid, and device fingerprints (FAC ¶¶ 65, 70, 72, 74) and financial information (FAC ¶¶ 73–76, Figs. 4–9) directly to Google. FAC ¶¶ 4, 6, 29, 31–35, 67–81. Google uses such data for its own purposes, e.g. marketing, advertising, product improvement. FAC ¶¶ 43–44, 49–50, 66.

Defendant now moves to dismiss Plaintiff's First Amended Complaint. However, each argument raised by Defendant is without merit. For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Co.*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading

was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

#### A. Plaintiff Suffered A Concrete And Particularized Injury

Defendant argues Plaintiff "lacks standing to bring his CIPA claims . . . because the FAC does not establish he suffered an injury in fact." MTD at 12. That is wrong.

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (citing *TransUnion*, 594 U.S. at 424). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to

privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krztzek v. OpenX Techs*., Inc., 2026 WL 206855, at *2 (N.D. Cal. Jan. 27, 2026) (same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) (same); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (collecting cases).

Providers of financial services, like Defendant, are prohibited from disclosing sensitive and confidential financial information. FAC ¶¶ 21–24 (GLBA); *id.* ¶¶ 25–29; 16 C.F.R. § 313.3(n); 16 C.F.R. § 313.3(k)(1); Cal. Fin. Code § 4052(a)–(b); Cal. Fin. Code § 4052.5. Consumers who have had their legally-protected information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. *See TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Gaige v. Exer Holding Co.*, *LLC*, 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted).

Defendant's reliance on *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Cal. 2025) is misplaced. The *Wooten* court's opinion turned on two key points—(1) the collection there was a "one-time collection and dissemination" and (2) the plaintiffs did "not allege that the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information.'" *Id.* 1145–46. Neither is present here. *Compare Wooten*, 807 F. Supp. 3d at 1145–46; *with* FAC ¶¶ 1–4, 6–7, 29, 31–35, 67–81. Here, the disclosure is repeated and continuous because Plaintiff must log in to his portal and make monthly payments to avoid accruing interest or entering default. Moreover, Plaintiff did not have a choice in his student loan provider such that he has no way to prevent future disclosures when he logs in to manage his loans. FAC ¶ 7. Additionally, the nature of the information here is inherently private because (1) it involves Plaintiff's interactions within his

own loan portal, and (2) it is legally protected financial information under both the GLBA and CalFIPA. FAC ¶¶ 31–35, 67–81. *Wooten* is therefore inapposite.

Plaintiff's allegations are clear: Defendant enables Google's interception of "'Custom Events' and URLs that disclose the financial services received by the user." FAC ¶ 56. This includes the specific information related to Plaintiff's actions within his financial portal. *Id.* ¶¶ 50, 69, 71 This information becomes directly attributable to each individual plaintiff when paired with PII, such as their "cid, IP address, and device information" as well as their partial email and phone number. *See id.* ¶¶ 75–78; *see also Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025) (finding most courts have found that Facebook IDs are PII).[1] These allegations are more than sufficient to confer Article III standing. *See Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) ("Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 950 (N.D. Cal. 2023) ("At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing."); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for standing purposes occurs when [LinkedIn, Meta,] Google, or any other third party, tracks a person's internet browser activity without authorization."); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969 (N.D. Cal. 2023) ("Statutes such as CIPA and WESCA thus 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'"); *Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016. In each case, a person has lost control over her private information because of another's intentional actions."); *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) ("Disclosure of facts that

[1] Google's user ID (i.e. "cid") corresponds to unique, identifiable users in substantially the same manner as a Facebook ID does.

allegedly reveal this highly sensitive information is sufficient to allege a concrete privacy harm analogous to those actionable under common law privacy torts.").

Defendant's disclosures here are particularly egregious because they relate to financial information within a user's private portal. *See* FAC ¶¶ 50, 69, 71. Indeed, "information may be classified as 'private' if it is 'intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public,'" as is the case here. *Maren Anderson et al. v. Nat'l Collegiate Athletic Ass'n et al.*, 2026 WL 925519, at *5 (C.D. Cal. Mar. 25, 2026); *see also Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025) (identifying an individual and their browsing history a sufficiently private to support Article III standing); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (explaining that "[a] right to privacy encompasses the individual's control of information concerning his or her person," and that tracking an individual's "likes, dislikes, interests, and habits over a significant amount of time" harms that individual's right to control their personal information) (cleaned up); *Moser v. Health Ins. Innovations, Inc.*, 2019 WL 2271804, at *12 (S.D. Cal. May 28, 2019) ("there are significant privacy concerns with requiring an individual to broadly produce or disclose 'browsing history'") (citing *Riley v. California*, 573 U.S. 373, 395-396 (2014)).

Defendant's reliance on *Wooten* to support its argument that no actual injury occurred is similarly misplaced, as the overwhelming weight of authority establishes the collection of information concerning one's person sufficiently confers Article III standing. *See Garcia*, Case No. 2:25-cv-05753-MEMF-PVC, ECF No. 33, at 8 ("Here, the Court finds that Garcia has plausibly alleged a violation of privacy to show he has been 'concretely harmed,' because Garcia reasonably alleges what PII was disclosed and captured by Truist to implicate a protectable privacy interest."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) ("the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases"); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) ("control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing.");

*Gabrielli v. Motorola*, 2025 WL 1939957, *6-7 (N.D. Cal. Jul. 14, 2025) (plaintiff had pleaded injury-in-fact on similar claims against a different defendant). Further, as Defendant readily acknowledges, *Wooten* did not consider an aiding-and-abetting theory, and Defendant's knowledge of its installation of such technologies within a private financial portal being unlawful is presumed. *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 ("Every citizen is presumed to know the law").

**B. Plaintiff Has Standing To Seek Injunctive Relief**

Defendant further argues Plaintiff lacks standing to "bring his claim for invasion of privacy under the California constitution because he failed to allege that he will continue using the Website and Nelnet will continue making unauthorized disclosures." MTD at 15. Not so.

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Defendant's arguments are based on a misreading of the complaint, as a plaintiff seeking injunctive relief need only show "a sufficient likelihood that he will again be wronged in a similar way." *Id.* Defendant's allegations overlook that Plaintiff is *an active student loan borrower* who must continue to use Defendant's Website to avoid his loans accruing interest. FAC ¶¶ 6–7. Every visit to the Website exposes him to the same unauthorized disclosures of his private and confidential data. *See generally*, FAC. Put simply, Plaintiff will continue to suffer if denied injunctive relief—Defendant still possesses Plaintiff's private information, and Google is still embedded in the manner described throughout the Complaint on the Website. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("Google's conduct has not stopped. Plaintiffs have demonstrated that absent an injunction, Google will continue to collect users' private . . . data for its own use").

**II. PLAINTIFF STATES A CLAIM UNDER CIPA SECTION 631**

Defendant argues Plaintiff fails to state a claim under Section 631 because (1) the party exception bars liability, (2) the crime-tort exception does not apply, and (3) Plaintiff did not allege

Defendant used Google Analytics as "anything more than a tool." MTD at 16–18. Defendant's arguments fail as set forth below.

### A. Plaintiff Alleges Aiding And Abetting Liability Under CIPA 631

Defendant's argument that Plaintiff "made no material changes to the allegations in the FAC other than adding extra aiding-and-abetting language" is based on a fundamental misconception of CIPA. MTD at 17. Plaintiff's amendments clarify Defendant's liability for violations of CIPA under a theory of aiding Google's unlawful conduct. *See* Cal. Penal Code § 631(a) (imposing liability on any person who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any prohibited act).

Plaintiff's First Amended Complaint alleges that "Defendant aided, agreed with, employed, permitted, or otherwise enabled Google to wiretap Plaintiff and members of the Class through Google Analytics." *See*, *e.g.*, FAC ¶ 98. The FAC is replete with allegations that Plaintiff did not consent to Defendant sharing his personally identifiable information and confidential financial information with non-party Google—nor could he, as Defendant's installation of the Google tracking technologies was unknown to him. FAC ¶¶ 5–6, 29, 92, 96, 9, 114. When read in conjunction with his allegations that Google uses this information for its own purposes (FAC ¶¶ 43–44, 49–50, 54–56, 66), Plaintiff's allegations are clear: Defendant aided non-party Google's interception of Plaintiff's communications without consent, such that Defendant is liable under the fourth prong of Section 631. Such allegations are routinely held to be sufficient at the motion to dismiss stage. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (finding that a plaintiff may state a claim for aiding liability against a defendant if the plaintiff adequately alleges that the third-party software provider has the capability to use the intercepted communications for any purpose other than providing them to the defendant); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025) ("As discussed above, Plaintiff Tate has pled facts that would support a viable claim that Invoca has violated the statute. Plaintiff's claims that VITAS has supported Invoca in doing so by allowing Invoca access to the calls and has presumably paid Invoca to analyze the data those calls yield are sufficient to implicate section 631(a). Accordingly, the Court finds that VITAS may

be found liable under section 631(a) for its role in assisting Invoca's monitoring and analysis of calls made to VITAS."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.").

Defendant also claims it was a "party to the communication" and thus exempt from Section 631(a) liability. MTD at 16. While a party to a communication may in certain circumstances be exempt from direct liability under the first three prongs of CIPA § 631(a), that exemption does not automatically insulate a party from aiding-and-abetting liability when it enables a third party's independent interception. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.").

As Judge Lin explained in *Ambriz v. Google*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025):

> Ninth Circuit courts are frequently called upon to apply the guidance of *Ribas* and *Rogers* to software service cases, and a split has emerged in courts' application of Section 631(a) to these facts. Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the "extension test." Other courts require only that plaintiff allege the software vendor has the *capability* to use the data for its own purposes.

*Id.*, at *3 (emphasis in original).

Here, Plaintiff's allegations are sufficient under either approach. For example, the FAC alleges that "Google has the capability to use and does use the wiretapped information for its own purposes," including targeted advertising. FAC ¶ 95; *see also id.* ¶ 55. Additionally, under the "extension test," the FAC is replete with allegations that Google indeed uses the information it collects for its own purposes. FAC ¶¶ 43–44, 49–50, 54–56, 66. Plaintiff's allegations are sufficient at this stage. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021); *Ambriz*, 2025 WL 830450, at *3; *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) ("[W]hen data is transmitted to an independent entity that uses or is capable of using the data for that entity's

own purposes, courts treat the third-party code as an eavesdropper and allow aiding and abetting claims to proceed against the website's owner.”).

Defendant’s statement the FAC does not “demarcate” between permissible and impermissible uses of Google Analytics (MTD at 19) imposes an artificially heightened pleading standard. At the motion to dismiss stage, Plaintiff need only plausibly allege—not prove with precision—that Google operated as an independent third-party eavesdropper. FAC ¶¶ 44–66, 95, 98.

### B. The Party Exception Does Not Shield Defendant From Liability Because CIPA Is An All-Party Consent Statute, And Plaintiff Did Not Consent to Google’s Interception

Defendant argues it is exempt from liability because it was a party to Plaintiff’s communications with the Website (MTD at 16) and the crime-tort exception does not apply (MTD at 17). That is wrong.

As a threshold matter, this Court need not reach the applicability of the crime-tort exception at all. Defendant’s argument rests on a flawed premise: that because Defendant was a party to the communications, the only way Defendant can be held liable is through the crime-tort exception. MTD at 16. However, Defendant’s argument conflates the ECPA’s one-party consent statute with CIPA which is an all-party consent statute.[2] *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (“the California Supreme Court would interpret Section 631(a) to require the prior consent of ***all*** parties to a communication”) (emphasis added); *Brown v. Google LLC,* 685 F. Supp. 3d 909, 937 n. 33 (N.D. Cal. 2023) (the defendant’s “argument is problematic for another reason—it creates a workaround to CIPA’s two-party consent rule. Cal. Penal Code § 630”).

Because CIPA demands the consent of *all* parties, Defendant’s consent to Google’s presence on the Website is legally insufficient to invoke the party exception. Google would only have been permitted to intercept Plaintiff’s communications ***if Plaintiff himself also consented***—which he did not. *See Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985) (explaining that CIPA’s purpose is to protect speakers from the “simultaneous dissemination to an unannounced second auditor” of their

[2] Section 632(a) likewise prohibits any person from “intentionally and without the consent of ***all*** parties to a confidential communication” using an electronic device to eavesdrop upon or record that communication. Cal. Penal Code § 632(a) (emphasis added).

communications). Plaintiff's allegations make unequivocally clear that he never provided such consent. FAC ¶ 99 ("Plaintiff and members of the Class did not provide their prior consent [to] Google's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Class Members' electronic communications. Nor did Plaintiff and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling Google's conduct."). Defendant does not—and cannot—contend otherwise.

The reason Plaintiff could not have consented is self-evident: Plaintiff did not know Google was there. The FAC alleges that Google's presence on the Website was entirely covert. FAC ¶¶ 2, 4, 6, 31 ("[u]nbeknownst to consumers, Defendant has integrated the Google Analytics wiretaps into the Website"). A consumer cannot consent to the interception of his communications by a third party whose very existence on the platform is hidden from him. This is precisely the scenario CIPA was enacted to prevent: "a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas*, 38 Cal. 3d at 363. The California Supreme Court recognized a "substantial distinction" between a party later repeating what was said and the "simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id*. at 360–61. Google is that unannounced second auditor.

Defendant's argument collapses the distinction between the ECPA and CIPA. Under the ECPA's one-party consent regime, a party to a communication may authorize a third party to intercept without the other party's knowledge, and liability only attaches if the crime-tort exception applies. 18 U.S.C. § 2511. But California rejected that framework when it enacted CIPA as an all-party consent statute. Under CIPA, the party exception shields only the party's own conduct—it does not grant a party the unilateral right to invite unknown third parties to intercept communications without the other party's knowledge or consent. *See* Cal. Penal Code § 631 (a person who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" is liable); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users'

information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.”).

In sum, because Google was a non-party eavesdropper, and because Plaintiff never consented to Google’s interception, the all-party consent requirement of CIPA was violated on its face. The party exception—which protects a *party* to the communication, not an undisclosed third party lurking behind the scenes—simply has no application to Google’s conduct. And because Defendant aided and abetted that conduct, Defendant is liable under Section 631(a)’s fourth prong and under Cal. Penal Code § 31 as applied to Section 632.

### C. This Court Should Not Reach The Crime-Tort Exception Because CIPA Is An All Party Consent Statute And Plaintiff Did Not Provide Consent

Defendant argues that Plaintiff fails to allege the crime-tort exception applies. MTD at 17. However, as discussed *supra* Section II-B, the Court need not determine whether the exception applies because Plaintiff does not allege an ECPA violation and Plaintiff has plausibly alleged he did not consent to the alleged interception. *See*, *e.g.*, FAC ¶ 99. Unlike under the ECPA, where “[t]he consent of one party is a complete defense to a Wiretap Act claim[,]” *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014), CIPA requires consent from all parties. That is not present here. Thus, there is no reason for the Court to analyze whether Nelnet’s consent to Google’s interception is negated by an exception. *See Katz-Lacabe v. Oracle America, Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (granting motion to dismiss ECPA claim and denying motion to dismiss CIPA claim).

## III. PLAINTIFF SUFFICIENTLY ALLEGES DEFENDANT VIOLATED CIPA SECTION 632

Defendant posits it is not liable under Section 632 because it was a party to Plaintiff’s communications to the Website such that there was no eavesdropping, and that Plaintiff failed to allege recording. That is wrong.

CIPA § 632(a) prohibits, “without the consent of all parties to a confidential communication,” the use of “an electronic amplifying or recording device to eavesdrop upon or record the confidential communication.” Cal. Penal Code § 632(a); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2

(9th Cir. May 31, 2022) ("Section 632 "prohibits . . . a party . . . from recording [a] conversation without first informing all parties to the conversation that the conversation is being recorded." (citing *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 930 (Cal. 2006)).

**A. Plaintiff Alleges A "Communication"**

Defendant argues, incorrectly, that Plaintiff "fails to plausibly allege communications." MTD at 21. The FAC does not merely allege the interception of automatically generated metadata. Rather, the FAC alleges that Plaintiff and Class Members affirmatively communicated with Defendant's Website by "typing into data fields, conveying responses to questions and prompts, and actively making other selections" while logged into their private loan portal. FAC ¶ 34. These are content-bearing exchanges. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1054 (N.D. Cal. 2025) ("Plaintiffs state that the 'contents' of their communication included Plaintiffs' personal information, which is a content under CIPA." (citing *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (finding that the definition of a content consists of both the communication and substance of the communication at issue)).

Defendant's characterization of Plaintiff's communications as merely "selecting options" or "generating a communication consisting of only an authentication code" (MTD at 22) improperly narrows the FAC's allegations. When a borrower logs into the Website, they are accessing their private financial portal. Every action taken therein is unique to them. For example, when a borrower makes payment or opts for repayment options (FAC ¶ 73), the borrower is communicating substantive financial decisions to Defendant—not merely clicking passively on a public facing Website. *See Shah*, 768 F. Supp. 3d at 1044-45, 1054-55; *cf. Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform . . . seeking treatment for specific conditions . . . constitute confidential communications."). Plaintiff's communications with Defendant therefore convey details about his financial situation. FAC ¶¶ 73–81, Figs. 4–9. Likewise, the "Custom Events" data transmitted to Google disclose the content of Plaintiff's interactions. FAC ¶ 56, Figs. 5, 7, 9.

**B. Plaintiff Alleges His Communications Were "Confidential"**

Defendant argues because Plaintiff "only alleges internet communications . . . there presumptively is no expectation of privacy under Section 632." MTD at 23. That is wrong.

A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002); *Brown*, 685 F. Supp. 3d at 939. This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). Even so, Plaintiff has established that he possessed an objectively reasonable expectation that the sensitive details of his activity within his financial account were not being recorded. FAC ¶¶ 2, 4, 79, 113, 119; *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (in denying Defendant's motion to dismiss a 632 claim the court emphasized the sensitive financial information submitted to a tax preparation website"); *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *see Shah*, 768 F. Supp. 3d at 1054; *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.") (quoting *Flanagan v. Flanagan,* 27 Cal. 4th 766, 776-77 (2002)).

Defendant's own authority undermines its position. *See L.B. v. LinkedIn Corp*., 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) ("The Court declines to decide [whether plaintiff's] communications are confidential in the pleadings stage" . . . "the Court DENIES Defendants' motions to dismiss Plaintiffs Section 632 claims").

**C. Plaintiff Alleges "Eavesdropping or Recording"**

Defendant argues Plaintiff "fails to state a plausible Section 632 claim because he does not allege eavesdropping or recording." MTD at 23. That is wrong.

It is well established that computer software that records communications with websites can constitute a "recording device" under Section 632. *Smith*, 2025 WL 1085169, at *3; *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856–57 (W.D. Wash. 2024); *Libman v. Apple, Inc.,*

2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (collecting cases finding that "software is a device under section 632(a)"). Section 632 is not limited to audio recordings; it encompasses electronic recording of communications broadly. The Amended Complaint alleges in detail that Google Analytics software records and stores Plaintiff's communications with the Website. FAC ¶¶ 53–56.

As to eavesdropping, the Amended Complaint alleges that Google—a third party not authorized to participate in Plaintiff's communications with Defendant—simultaneously intercepted and monitored those communications in real time as they occurred. FAC ¶¶ 36–39, 50, 64, 67, 112. This is quintessential eavesdropping: a third party "listening in" on a communication to which it is not a party. The First Amended Complaint further alleges that Defendant ***assisted*** Google in this eavesdropping. FAC ¶¶ 75, 98, 112.

## IV. CIPA SECTION 632 SUPPORTS AIDING-AND-ABETTING LIABILITY

Defendant argues Plaintiff's "Section 632 claim cannot be sustained on the theory that Nelnet aided and abetted Google." MTD at 24. That is incorrect.

Although not explicit, Section 632 allows for derivative liability. "All persons concerned in the commission of a crime … or aid and abet in its commission … are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith*, 2025 WL 1085169, at *5. As a result, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Thus, Plaintiff plausibly alleges Defendant is liable as an eavesdropper under Section 632 under a theory of derivative liability. FAC ¶ 33 (Defendant enables "Google Analytics to eavesdrop on [Plaintiff and Class Members] confidential communications").

## V. SHOULD THE COURT GRANT DEFENDANT'S MOTION IN WHOLE OR IN PART, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND[3]

Defendant argues "this Court should dismiss [Plaintiff's] CIPA claims with prejudice." MTD at 25. That is wrong.

Although a court may dismiss with prejudice when a plaintiff has "failed to plead properly after repeated opportunities," *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011), to amend adequately a plaintiff must first be given adequate "notice of the deficiencies in his complaint in order to ensure that he used the opportunity to amend effectively." *Branch v. Umphenour*, 851 F. App'x 732, 734 (9th Cir. 2021); *Coal. on Homelessness v. City & Cnty. of San Francisco*, 758 F. Supp. 3d 1102, 1140 (N.D. Cal. 2024) ("Rule 15(a) provides generally that leave to amend the pleadings before trial should be given 'freely . . . when justice so requires.' Fed. R. Civ. P. 15(a)(2)"); *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) ("This policy is to be applied with extreme liberality"). Although the First Amended Complaint plausibly alleges violations of CIPA Sections 631 and 632, should the Court identify a deficiency, Plaintiff respectfully requests leave to amend, as the Court did "not reach Nelnet's remaining arguments regarding these claims" in its January 29, 2026 Order.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to amend the Complaint.

Dated: April 9, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606

---

[3] Defendant's argument that the "FAC disregarded this Court's requirements for pleading plausible" CIPA claims (MTD at 24) mistakenly conflates the ECPA's one party consent standard with CIPA's all-party consent standard. *Supra* Sections II-A, B.

Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
Email: sbeck@bursor.com

*Counsel for Plaintiff*